OPINION
{¶ 1} Defendant-appellant, Rocky A. Edwards, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.
 {¶ 2} On the evening of June 12, 2004, Jarred Post and his roommates, Sean Morgan and Micah Middleton, had a party at their townhouse in Worthington, Ohio. Among the people at the party were Christopher Barnes, who lived across the street, his girlfriend Amanda Mango, Justin Richards, Tyler Martin, and Ryan Sparks. Early in the morning of June 13, an altercation occurred outside of the townhouse. Someone drove a truck on the grass and almost ran into Morgan's parked car. Micah, Jarred, and Ryan confronted the two occupants of the truck. The two occupants got out of the truck and a fight ensued between Micah and one of the occupants, who Micah later identified as Sean Conley. The fight broke up and Conley and his passenger got back in the truck and drove away. Micah heard someone in the truck yell that they would be back.
 {¶ 3} After the altercation, Micah, Jarred, and Ryan went back into the townhouse. By 5 a.m., the party was over and Jarred, Ryan, Tyler, Justin, and one other person were talking on the first floor of the townhouse. They heard a knock on the door and Ryan opened the door. Two men at the door began yelling at Ryan about the earlier altercation. One of the men then punched Ryan, knocking him to the ground. The two men then ran into the townhouse and began fighting with Justin. A third man, later identified as appellant, entered the townhouse with a bat and headed toward Jarred. After a scuffle, appellant swung the bat and hit Jarred in the head, knocking him unconscious. Tyler, who witnessed the entire incident from the kitchen, yelled out appellant's name, and with that, appellant and the other men ran out of the townhouse. Columbus Police were called to the scene shortly after the fight. Tyler told the police that appellant hit Jarred with a baseball bat.
 {¶ 4} As a result of the attack, Jarred suffered a fractured skull and was in the intensive care unit for four days. He could not speak for a week and could not use his right arm. He underwent two and one-half months of physical therapy and has returned to college but still slurs his speech.
 {¶ 5} Appellant was subsequently indicted by a Franklin County Grand Jury on one count of felonious assault in violation of R.C. 2903.11. Appellant entered a not guilty plea to the charge and proceeded to a jury trial. At trial, the State theorized that Conley was upset about the first altercation outside the townhouse and called appellant, his friend, to go back to the party with him. Both Amanda Mango and appellant's ex-girlfriend, Nicole Wells, testified that appellant and Conley were best friends. Christopher Barnes, Micah, and Jarred testified that Conley was at the party and that he was involved in the first altercation outside the townhouse.[1] Tyler and Justin identified appellant as the person who came into the townhouse at 5 a.m. with a baseball bat. Tyler also testified that appellant hit Jarred with the bat.
 {¶ 6} Both appellant and Conley testified that their friendship, while never close, ended before this incident. Appellant denied hitting Jarred with a baseball bat. In fact, both appellant and Conley denied they were at the townhouse or involved in any of the events that morning. Appellant claimed that he was at home with his girlfriend the entire night. His girlfriend supported his alibi.
 {¶ 7} The jury found appellant guilty of felonious assault and the trial court sentenced him accordingly. Appellant appeals and assigns the following errors:
 ASSIGNMENT OF ERROR I
 Appellant was denied effective assistance of counsel in violation of his due process rights under the state and federal constitutions.
 ASSIGNMENT OF ERROR II
 The trial court committed plain error by failing to properly instruct the jury as to how it may consider a prior juvenile adjudication against Appellant in violation of his right to a fair trial under the state and federal constitutions.
 ASSIGNMENT OF ERROR III
 The trial court commits reversible error when it makes findings of fact to give more than the minimum sentence to an offender who has not previously served a prison term, when those facts were not proven beyond a reasonable doubt to the jury.
 ASSIGNMENT OF ERROR IV
 The trial court committed reversible error when it compelled testimony and allowed testimony regarding Appellant's prior juvenile adjudication, in violation of Appellant's right to a fair trial under the state and federal constitutions.
 {¶ 8} For ease of analysis, we will address appellant's assignments of error out of order. In his fourth assignment of error, appellant contends that the trial court improperly allowed testimony regarding a previous juvenile adjudication. We disagree.
 {¶ 9} In 1998, when appellant was 15, he was charged with felonious assault arising out of an incident in which he hit someone with a baseball bat. The juvenile court determined that appellant knowingly hit the victim with a baseball bat, causing serious physical harm. As a result of this determination, appellant spent time in a juvenile detention center for the offense.[2]
 {¶ 10} During appellant's direct examination in the case at bar, his trial counsel asked him whether he had "ever hit anybody in the head with a baseball bat?" Appellant began to explain about the prior juvenile adjudication. Before appellant could fully respond, his trial counsel stopped him and asked whether appellant was talking about something that happened in the past. The State objected, and the trial court sustained the objection, noting that trial counsel "asked him a question. You got an answer." Appellant continued to explain the prior juvenile adjudication. He testified that he got into a fight with some older kids and that he was accused of using a baseball bat during the fight. He denied that he used a bat during that incident. He testified that the injured person hurt himself as he was running toward appellant.
 {¶ 11} During the next recess, appellant's counsel asked the trial court to prohibit the State from questioning appellant about the prior juvenile adjudication. The State argued that by raising the adjudication during his direct testimony and by denying the facts of the adjudication, the State should be able to question him regarding the adjudication. The trial court allowed the State to question appellant about the prior juvenile adjudication. During the State's cross-examination, appellant admitted that the charge alleged that he hit someone in the head with a bat and that he spent time in a juvenile detention center following the adjudication of that incident.
 {¶ 12} The admissibility of evidence of a juvenile adjudication is controlled by R.C. 2151.358(H). See, also, Evid. R. 609(D). That statute provides, in relevant part:
 Evidence of a judgment rendered and the disposition of a child under the judgment is not admissible to impeach the credibility of the child in any action or proceeding. Otherwise, the disposition of a child under the judgment rendered or any evidence given in court is admissible as evidence for or against the child in any action or proceeding in any court in accordance with the Rules of Evidence * * *.
 {¶ 13} The purpose of this statute is to prohibit the use of juvenile adjudications for purposes of general impeachment of a witnesses' credibility. State v. Robinson (1994), 98 Ohio App.3d 560, 568;State v. White (1982), 6 Ohio App.3d 1, 2; State v. Goodwin (Sept. 24, 2001), Mahoning App. No. 99-CA-220. Where the submission of the juvenile adjudication is done merely to disclose that the adjudication exists in order to denigrate the juvenile's general credibility, the juvenile adjudication is inadmissible. Id; see, also, State v. Cox (1975),42 Ohio St.2d 200, 204 (admission of juvenile records not "an attempt to impeach [witness] by a general showing of prior Juvenile Court appearances as the result of misconduct."). Other valid uses, however, may be present which allow the admission of such evidence.Robinson. For instance, juvenile adjudications may be used to contradict or impeach specific testimony of a witness as opposed to a general attack on the witnesses' credibility. See State v. Hilty (Oct. 19, 1990), Trumbull App. No. 89-T-4204; Goodwin. The State may also present evidence of a juvenile adjudication where the witness places his character at issue by introducing evidence to show positive character traits. Robinson, at 569, citing State v. Hale (1969),21 Ohio App.2d 207, 214.
 {¶ 14} In the present case, appellant's trial counsel raised the issue of appellant's prior juvenile adjudication. Therefore, appellant opened the door to the State's further questioning; the State did not raise the issue. See State v. Koballa, Cuyahoga App. No. 82013, 2003-Ohio-3535, at ¶ 26 (affirming questioning of juvenile about prior juvenile adjudications where juvenile himself raised issue). Moreover, in describing the juvenile adjudication, appellant denied hitting the victim with a baseball bat. Given appellant's testimony, the State was entitled to question appellant further and to bring out the result of the adjudication. Id.; State v. Marinski (1942), 139 Ohio St. 559,560-561 (allowing questions about juvenile's previous incarceration which he omitted from testimony about his past; R.C. 2151.358 should not be used to deceive or to accomplish miscarriage of justice). Because appellant opened the door to questions regarding his prior juvenile adjudication and attempted to minimize his conduct during that incident, the trial court did not err by allowing the State to cross-examine appellant about the result of that adjudication. Appellant's fourth assignment of error is overruled.
 {¶ 15} Appellant contends in his second assignment of error that the trial court erred by failing to properly instruct the jury regarding how it could consider appellant's prior juvenile adjudication. The trial court instructed the jury that "[testimony was introduced in this trial tending to show that [appellant] had been convicted of a crime. You may only consider this testimony to judge the [appellant's] credibility and the weight to be given his testimony." Trial counsel did not object to the instruction and did not request a different instruction. Appellant now contends that the trial court should have specifically instructed the jury that they were not permitted to consider his prior juvenile adjudication in determining whether he acted in conformity with that adjudication in this case.
 {¶ 16} As a general rule, the failure to object at trial or to request specific jury instructions waives all but plain error with respect to the jury instructions given. State v. Hartman (2001), 93 Ohio St.3d 274,289. Plain error exists where the outcome of the trial would clearly have been different but for the error. State v. Biros (1997),78 Ohio St.3d 426, 431. The plain error rule must be applied with the utmost caution and invoked only under exceptional circumstances to prevent a manifest miscarriage of justice. State v. Noling, 98 Ohio St.3d 44,2002-Ohio-7044, at ¶ 62; State v. Cooperrider (1983), 4 Ohio St.3d 226,227.
 {¶ 17} The trial court did not commit plain error by instructing the jury as it did. The instruction stated that the jury could only consider appellant's previous adjudication to judge whether appellant's specific testimony was credible. Although the jury was not specifically instructed to not consider appellant's prior juvenile adjudication as evidence that he acted in conformity with the adjudication in this instance, the jury was instructed that it could consider the evidence for only one reason: to determine the credibility of appellant's testimony. A jury is presumed to follow the instructions of the court.State v. Loza (1994), 71 Ohio St.3d 61, 75. Therefore, it is presumed that the jury only considered the adjudication to determine credibility and did not consider it as evidence that appellant acted in conformity with his prior adjudication. Although the trial court's instruction could have been more complete, we fail to find plain error. Therefore, appellant's second assignment of error is overruled.
 {¶ 18} In his first assignment of error, appellant contends that he received ineffective assistance of counsel because his trial counsel: (1) brought out his prior juvenile adjudication on direct examination; and (2) failed to request a proper limiting instruction regarding his prior juvenile adjudication.
 {¶ 19} In order to prevail on an ineffective assistance of counsel claim, appellant must meet the two-prong test enunciated inStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052; accordState v. Bradley (1989), 42 Ohio St.3d 136, certiorari denied (1990),497 U.S. 1011, 110 S.Ct. 3258. Initially, appellant must show that counsel's performance was deficient. To meet that requirement, appellant must show counsel's error was so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Appellant may prove counsel's conduct was deficient by identifying acts or omissions that were not the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Strickland, at 690. In analyzing the first prong of Strickland, there is a strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. Id. at 689. Appellant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. Id., citing Michel v. Louisiana
(1955), 350 U.S. 91, 101, 76 S.Ct. 158.
 {¶ 20} If appellant successfully proves that counsel's assistance was ineffective, the second prong of the Strickland test requires appellant to prove prejudice in order to prevail. Id. at 692. To meet that prong, appellant must show counsel's errors were so serious as to deprive him of a fair trial, a trial whose result is reliable. Id. at 687. Appellant would meet this standard with a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 21} Even if this court were to assume that appellant's trial counsel was deficient, appellant has failed to demonstrate a reasonable probability that, but for his counsel's deficient representation, the result of the proceeding would have been different, as there is overwhelming evidence of appellant's guilt in this case. See State v.Hester, Franklin App. No. 02AP-401, 2002-Ohio-6966, at ¶ 16 (overwhelming evidence of guilt prevented defendant from proving result would have been different); State v. Price (Dec. 31, 2001), Franklin App. No. 00AP-1434 (no ineffective assistance of counsel where overwhelming evidence supported trial court's decision).
 {¶ 22} Christopher Barnes and Amanda Mango both testified that Sean Conley was at the party in the early morning hours of June 13, 2004. Amanda Mango previously dated Conley and obviously knew what he looked like. Christopher Barnes was also acquainted with Conley and testified that Conley was involved in a fight outside the townhouse. They also testified that they had previously left the party because they saw Conley and they did not want any trouble with him. Additionally, Micah and Jarred testified that Conley was involved in a fight outside the townhouse. Micah described how he wrestled with Conley during the altercation. Micah also testified that as Conley left in a truck he heard someone in the truck yell that they would be back.
 {¶ 23} Amanda Mango and Nicole Wells, ex-girlfriends of Conley and appellant, respectively, testified that Conley and appellant were best friends and spent a significant amount of time together. Amanda testified that when she heard that Conley said he would be back that night, she knew that he would bring appellant with him. Finally, Tyler and Justin testified that appellant came into the townhouse with a baseball bat. Tyler also identified appellant as the person who hit Jarred with the bat. Tyler explained that he immediately recognized appellant because he had played basketball with him on a number of occasions and that he knew appellant from their high school. Appellant admitted that he played basketball at the same court where Tyler played, and that he and Tyler went to the same high school for a brief period. Both Tyler and Justin testified that they were 100 percent certain of their identifications. The record does not reflect any reason why the testimony of Tyler and Justin was not credible.
 {¶ 24} Both appellant and Conley denied that they had ever been to the townhouse or that they had any involvement in the events of that night/early morning. They also denied that they were friends at the time of this incident. Appellant's girlfriend supported appellant's alibi defense. However, multiple witnesses who were well acquainted with Conley testified that he was involved in a fight outside the townhouse earlier that night/early morning. As Conley was leaving in a truck, a witness heard someone in the truck yell that they would be back. There was significant evidence that Conley and appellant were friends. Amanda Mango, who had previously dated Conley, thought that Conley would return to the townhouse with appellant. Two other witnesses, Tyler and Justin, identified appellant as the person who later entered the townhouse with a bat and attacked Jarred. Tyler was acquainted with appellant and actually called out appellant's name at the time of the attack. Both Tyler and Justin were 100 percent certain of their identification. The record reveals no reason why these witnesses would falsely identify appellant as the attacker. Given the strength of the eyewitness identifications, appellant has failed to demonstrate a reasonable probability that but for his counsel's ineffective representation, the result of the trial would have been different. Accordingly, appellant's first assignment of error is overruled.
 {¶ 25} Lastly, appellant contends in his third assignment of error that the trial court violated Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, by imposing a non-minimum sentence based on factual findings neither admitted by him nor found by a jury. See, also,State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856 (finding many of Ohio's sentencing statutes unconstitutional in violation of Blakely). However, appellant failed to object to the trial court's imposition of a non-minimum sentence based on Blakely. Therefore, appellant has waived this challenge. State v. Draughon, Franklin App. No. 05AP-860,2006-Ohio-2445, at ¶ 7. Moreover, as the State points out, the trial court failed to make the findings required under R.C. 2929.14(B)(2) to impose a sentence greater than the minimum sentence. Therefore, appellant could not have been prejudiced by the trial court's failure to follow a statute that the Supreme Court of Ohio has since declared unconstitutional. Appellant's third assignment of error is overruled.
 {¶ 26} Appellant's four assignments of error are overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and SADLER, JJ., concur.
[1] Amanda Mango, Sean Conley's ex-girlfriend, placed Conley at the party but could not testify that he was involved in the first altercation because she left the party before the altercation occurred.
[2] The facts of appellant's juvenile adjudication are gleaned from testimony presented at trial; the actual entry of adjudication was not admitted as evidence in this case.