[Cite as *State v. Valentine*, 2016-Ohio-277.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 14AP-893 |
| v. | : | (C.P.C. 11CR12-6324) |
| Brian S. Valentine, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 26, 2016

*Ron O'Brien,* Prosecuting Attorney, and *Michael P. Walton,* for appellee.

*Steven Young,* Ohio Public Defender, and *Allen Vender,* for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Brian S. Valentine, appeals from a judgment of conviction entered by the Franklin County Court of Common Pleas. For the following reasons, we affirm that judgment.

## I. Factual and Procedural Background

{¶ 2} On December 5, 2011, a Franklin County Grand Jury indicted appellant with a count of carrying a concealed weapon ("CCW") in violation of R.C. 2923.12. The charge arose as the result of an altercation appellant had with a woman. The state alleged that appellant had a concealed gun in his coat pocket during the altercation. Appellant entered

a not guilty plea to the charge and proceeded to a jury trial.[1]  The central piece of evidence against appellant during the trial was his recorded interview with police after the altercation.  In the interview, appellant admitted carrying a gun in his coat pocket that day and that he did not have a permit to carry a concealed weapon.  (Tr. 130-33.)

{¶ 3}  The jury found appellant guilty of CCW and the trial court sentenced him accordingly.

## II. The Appeal

{¶ 4}  Appellant appeals and assigns the following error:

> Brian Valentine received ineffective assistance of counsel because his attorney failed to file a motion to suppress his statement to the police, when he did not knowingly, intelligently, and voluntarily waive his *Miranda* rights; and failed to file a motion [in] limine or object to irrelevant and prejudicial testimony about Valentine allegedly selling crack-cocaine, in violation of Valentine's rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, Sections 1 and 10, of the Ohio Constitution.

{¶ 5}  Appellant contends in this assignment of error that he received ineffective assistance of trial counsel.  Specifically, he first contends that trial counsel was ineffective for failing to file a motion to suppress the statements he made to the police.  We disagree.

{¶ 6}  To establish a claim of ineffective assistance of counsel, appellant must show that counsel's performance was deficient and that counsel's deficient performance prejudiced him.  *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington* (1984), 466 U.S. 668, 687.  The failure to make either showing defeats a claim of ineffective assistance of counsel.  *State v. Bradley* (1989), 42 Ohio St.3d 136, 143, quoting *Strickland* at 697. ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.")

{¶ 7}  In order to show counsel's performance was deficient, the appellant must prove that counsel's performance fell below an objective standard of reasonable

---

[1] Seven months after his plea, the issue of appellant's competency to stand trial was raised.  After an evaluation, the trial court found appellant not to be competent to stand trial. Within three months, however, after another evaluation, the trial court concluded that appellant was then competent to stand trial.

representation. *Jackson* at ¶ 133.  The appellant must overcome the strong presumption that defense counsel's conduct falls within a wide range of reasonable professional assistance. *Strickland* at 689.  To show prejudice, the appellant must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, ¶ 204.

### A.  The Failure to File a Motion to Suppress

{¶ 8}   Trial counsel's failure to file a suppression motion does not constitute per se ineffective assistance of counsel.  *State v. Madrigal*, 87 Ohio St.3d 378, 389 (2000), citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986).  To establish ineffective assistance of counsel for failure to file a motion to suppress, a defendant must prove that there was a basis to suppress the evidence in question, *State v. Brown*, 115 Ohio St.3d 55, 2007-Ohio-4837, ¶ 65, citing *State v. Adams*, 103 Ohio St.3d 508, 2004-Ohio-5845, ¶ 35, or as this court has said, "a solid possibility that the court would have suppressed the evidence." *State v. Massey*, 10th Dist. No. 12AP-649, 2013-Ohio-1521, ¶ 15.

{¶ 9}   Appellant argues that a motion to suppress his statements to the police would have been successful because he did not knowingly or intelligently waive his rights before making the statements.  We disagree.

{¶ 10} A suspect in police custody " 'must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.' " *State v. Lather*, 110 Ohio St.3d 270, 2006-Ohio-4477, ¶ 6-7, quoting *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).  Of course, one may waive or relinquish a known right.  In the context of *Miranda*, the United States Supreme Court has explained the two aspects of waiver.  First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.*

{¶ 11} A court may infer from the totality of the circumstances that a defendant voluntarily, knowingly, and intelligently waived his rights. *State v. Clark*, 38 Ohio St.3d 252, 261 (1988); *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, ¶ 52. The totality of the circumstances includes "the age, mentality, and prior criminal experience of the accused; the length, intensity, and frequency of interrogation; the existence of physical deprivation or mistreatment; and the existence of threat or inducement." *State v. Dixon*, 101 Ohio St.3d 328, 2004-Ohio-1585, ¶ 25, quoting *State v. Eley*, 77 Ohio St.3d 174, 178 (1996). "Only if the 'totality of the circumstances surrounding the interrogation' reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *Lather* at ¶ 7, citing *Moran v. Burbine*, 475 U.S. 412, 421 (1986). By definition of "totality," a court is to look to all of the evidence to determine a suspect's understanding, which can be implied by his conduct and the situation. *Id.* at ¶ 9.

### 1. The Police Interview

{¶ 12} Detective David Bucy of the Columbus Police Department interviewed appellant on November 26, 2011. (Tr. 124.) At the beginning of the interview, Bucy told appellant that he was going to question him about appellant's possession of a gun in his coat pocket. Appellant indicated that he understood that. During Bucy's preliminary questions, appellant told Bucy that he knew he was in police headquarters and that he was not free to go. (Tr. 121.) He also told Bucy that he had attended some college and could read and write "[f]airly well." (Tr. 122.) He also denied taking any alcohol or drugs that day. (Tr. 122.) Bucy testified at trial that appellant appeared coherent and appeared to understand what Bucy was asking him with respect to appellant's rights. (Tr. 119, 142.) Bucy saw no problems with questioning appellant at that time. (Tr. 120.) Detective Bucy then advised appellant of his *Miranda* rights and, after reading all of them, asked him: "do you understand those rights? Do you have any questions whatsoever about those rights?" Appellant replied "[n]ot about the rights, no." (Tr. 123.)

{¶ 13} Appellant then told Bucy that he wanted to make a "statement." (Tr. 124.) Appellant told Bucy that he had been released from the Ohio Hospital for Psychiatry "not too long ago." Appellant told Bucy that he went into the hospital after calling the police on himself because he did not know who else to call. (Tr. 126-27.) He was in the hospital

for ten days, from October 29 until his release on November 8 or 9. Bucy asked appellant if he suffered from a mental illness or condition, and appellant replied that he had been diagnosed as manic depressive and described it as a "bit of a mix between depression and kind of a -- I don't know what you say, bipolar." (Tr. 125.) He explained that it made him "lose kind of touch with reality and reasoning and things." (Tr. 125.) When Bucy asked him about his current mental state, appellant replied that he was "not really in the best of moods right now. But the robbery charge, you know." (Tr. 125.) Appellant expressed frustration with the police officers he had previously spoken to because he said he told them the truth. (Tr. 125.) Bucy asked appellant if he was upset or just mad about being arrested and appellant replied "I'm a little upset. No, not really, because I need help. I need help. I don't really need to be --." (Tr. 126.) Bucy then questioned appellant about his stay in the hospital. (Tr. 126-27.) Bucy ultimately asked appellant if he felt "as if you are in a mental condition that you can answer questions honestly" and appellant replied that he "probably would answer the questions a little too honestly. I don't know if that makes sense. But, I mean-." (Tr. 127.) Appellant then proceeded to tell Bucy about the altercation with the woman. Appellant indicated that he had met the woman to collect money that she owed him. When Bucy asked him if she owed him money for drug transactions, appellant would not answer. (Tr. 129.) He also admitted that he had a gun in his coat pocket that day but did not have a license to carry a concealed weapon. (Tr. 130-31.)

### 2. Did Appellant Understand and Waive His *Miranda* Rights?

{¶ 14} Appellant does not allege that he was intimidated, coerced, or deceived such that his waiver was not voluntary. Instead, he argues that he did not knowingly and intelligently waive his *Miranda* rights. He first argues that he never expressly told Bucy that he understood the rights he was waiving. We agree that appellant never expressly stated that he understood his constitutional rights. Nevertheless, it is clear that appellant understood his constitutional rights based upon what he did say. After informing appellant of his constitutional rights, Bucy expressly asked him if he had any questions. Appellant stated he did not. In the absence of indications that appellant did not understand or somehow misunderstood his rights, we can only conclude that appellant understood his rights when he stated he had no questions about them. Appellant also

exercised those rights when he refused to answer Bucy's question regarding whether he was meeting the woman to collect money for a drug transaction.

{¶ 15} Appellant also argues that he did not expressly waive his rights. The fact that appellant did not sign a rights waiver form or expressly state that he was waiving his rights is not controlling in this analysis. "An express written or oral statement of waiver of the right to remain silent or the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver. The question is not one of form, but rather whether the defendant in fact knowingly and voluntarily waived the rights delineated in *Miranda*." *State v. Scott*, 61 Ohio St.2d 155 (1980), paragraph one of the syllabus; *State v. Haynes*, 10th Dist. No. 01AP-430, 2002-Ohio-4389, ¶ 53. Bucy never asked appellant to sign the waiver form even though it appears that Bucy had the form with him during the interview. While having a suspect sign a waiver form is preferable, the absence of a signed waiver form is not controlling. *State v. Moss*, 10th Dist. No. 00AP-574 (Apr. 12, 2001); *State v. Underdown*, 10th Dist. No. 06AP-676, 2007-Ohio-1814, ¶ 24. Additionally, as the *Lather* court noted, "[a]lthough it may not seem overly burdensome, and perhaps would be better practice, for law enforcement officers to ask specifically whether a suspect understands his or her rights, *Miranda* does not require it." *Lather* at ¶ 13. Instead, as noted above, a court may imply waiver of *Miranda* rights given the totality of the circumstances. *Id.* at ¶ 7-9.

{¶ 16} Appellant also argues that he could not knowingly waive his rights because of his mental condition at the time of the interview. However, appellant does not explain how the mental condition he described prevented him from voluntarily speaking with Bucy. An accused's mental condition, although a relevant consideration, does not by itself prevent an effective waiver of constitutional rights. *State v. Rosales*, 4th Dist. No. 01CA2588, 2002-Ohio-6132, ¶ 55, citing *Colorado v. Connelly*, 479 U.S. 157 (1986). *See also State v. Worley*, 11th Dist. No. 2001-T-0048, 2002-Ohio-4516, ¶ 166 (defendant who had been "in and out of several hospitals on suicide watch" properly waived his rights where nothing unusual about his mental state during the interview). *See also State v. Kirk*, 3d Dist. No. 3-12-09, 2013-Ohio-1941, ¶ 29-30 (noting that diminished mental capacity alone does not prevent waiver of rights, but is one factor considered in totality of the circumstances).

{¶ 17} Here, after reviewing the totality of the interview, we conclude that appellant understood his rights and voluntarily spoke to Bucy, thereby implicitly waiving his *Miranda* rights. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010); *State v. Jallah*, 8th Dist. No. 101773, 2015-Ohio-1950, ¶ 78. Bucy informed appellant of his *Miranda* rights. Appellant stated he had no questions about those rights. Appellant then spoke to Bucy without any claim of coercion, intimidation, or deception. The entire exchange during the interview indicates that appellant voluntarily spoke to Bucy. Again, without some indication that appellant's alleged mental condition prevented him from acting voluntarily, we can only conclude that appellant implicitly waived his *Miranda* rights when he spoke to Bucy.

### 3. Should Police Have Questioned Appellant Further About His Understanding of His Rights?

{¶ 18} Appellant next argues that Bucy had to ask him additional questions to ensure that he understood his rights after he told Bucy of his mental health issues. Again, we disagree.

{¶ 19} As appellant correctly points out, the Supreme Court of Ohio has concluded that "[w]here a suspect, after being fully apprised of his constitutional rights under *Miranda*, indicates an understanding of those rights, but subsequently acts in such a way as to reasonably alert the interrogating officer that the warnings given have been misapprehended, the officer must, before any further questioning, insure that the suspect fully understands his constitutional privilege against self-incrimination, as described in *Miranda*." *State v. Jones*, 37 Ohio St.2d 21 (1974), syllabus. The defendant in *Jones* indicated to the questioning police officer that he understood his rights but that he would not sign a waiver of rights. The officer began questioning Jones, but when the officer began taking notes, Jones objected to the note taking and refused to speak further if the officer wrote anymore. *Id.* at 24. The officer stopped taking notes but continued asking Jones questions during which he made admissions that were used against him at trial. On appeal, Jones argued that he did not effectively waive his rights because he mistakenly believed that only written statements could be used against him. *Id.* at 25. The Supreme

Court held that in such a situation, where a defendant acts in such a manner that would reasonably alert an officer that the defendant has misapprehended the *Miranda* rights, the officer must further question the defendant to insure that the defendant fully understands the rights. *Id.* at 26-27. The court concluded that Jones' act of only objecting to written statements demonstrated that he misunderstood his rights and that the officer failed to insure that he understood them after the misunderstanding was apparent. *See also State v. Walker*, 1st Dist. No. C-810799 (Oct. 27, 1982) (suspect's act of checking on a rights form that he understood only three of the five rights but then signing a general form indicating he understood all of his rights was inconsistent conduct that constituted "indicia of misapprehension" that required, pursuant to *Jones*, further steps by police to insure suspect's proper understanding of rights).

{¶ 20} Appellant's reliance on *Jones* is unpersuasive given the facts presented here. Appellant indicated that he understood his rights. Thereafter, appellant said nothing that would have reasonably alerted Bucy that appellant had misunderstood his rights. *See State v. Hall*, 48 Ohio St.2d 325, 332 ("The record discloses that the appellant responded appropriately to the questions and he appeared to be calm and intelligent. According to the testimony, at no time did the appellant manifest any conduct which could be construed as a misapprehension of his rights."); *State v. Barker*, 3d Dist. No. 16-87-5 (Nov. 28, 1988) ("Nothing the appellant did during questioning would have reasonably alerted [the officer] that he did not understand the warnings and rights read to him by the [officer]."); *Kirk* at ¶ 26 (citing Ohio cases highlighting that suspect's conduct must alert the officer to a misunderstanding of rights). Additionally, Bucy testified at trial that appellant appeared coherent and appeared to understand what Bucy was asking him with respect to appellant's rights. (Tr. 119, 142.) *See Kirk* (waiver analysis considers observations of police officer questioning suspect). The fact that appellant told Bucy about his recent stay at a mental facility and his alleged mental condition does not indicate that he misunderstood his rights. In fact, during the interview, appellant was able to intelligently and coherently explain his situation to Bucy and the altercation that led to his arrest. He also understood enough during the interview to refuse to answer Bucy's question regarding whether appellant was meeting the woman to collect money for a drug transaction. (Tr. 129.) Simply put, appellant did not act in a manner that would

have reasonably alerted Bucy that appellant misunderstood his *Miranda* rights, even though Bucy was aware of appellant's mental condition. Thus, Bucy was not under any obligation pursuant to *Jones* to further question appellant about his understanding of the *Miranda* rights once he indicated that he understood them.

{¶ 21} Appellant has not demonstrated a basis for suppression or a solid possibility that the trial court would have suppressed the statements he made to police. Accordingly, trial counsel was not ineffective for failing to file a motion to suppress.

### B.  Failure to Object to Testimony

{¶ 22} Appellant also argues that his trial counsel was ineffective for failing to object to testimony indicating that he sold drugs.[2] Again, we disagree.

{¶ 23} At trial, Sergeant Christopher Odom testified that he arrived on the scene of the altercation between appellant and the woman. He testified that appellant told him that the woman owed him some money from a drug debt. (Tr. 35.) Bucy, in his testimony, read Sergeant Odom's report which stated that appellant told him that the woman called him to make arrangements to settle a drug debt. (Tr. 173-74.) Appellant contends that trial counsel was ineffective for not objecting to this irrelevant and inadmissible testimony which should have been excluded under Evid.R. 403 because its probative value was substantially outweighed by the danger of unfair prejudice.

{¶ 24} Even if this court were to assume that appellant's trial counsel was deficient in this regard, appellant has failed to demonstrate a reasonable probability that, but for his counsel's deficient representation, the result of the proceeding would have been different, as there is overwhelming evidence of appellant's guilt in this case. *State v. Edwards*, 10th Dist. No. 05AP-828, 2006-Ohio-6987, citing *State v. Hester*, 10th Dist. No. 02AP-401, 2002-Ohio-6966, ¶ 16 (overwhelming evidence of guilt prevented defendant from proving result would have been different). Here, appellant conceded in his properly admitted statements to police that he had a concealed weapon in his coat

---

[2] Preliminarily, we reject appellant's argument that counsel could be ineffective for failing to file a motion in limine regarding this testimony. As a pretrial, preliminary, anticipatory ruling, finality does not attach when a motion in limine is decided. *Columbus v. Zimmerman*, 10th Dist. No. 14AP-963, 2015-Ohio-3488, ¶ 9, citing *State v. Simpson*, 5th Dist. No. 06 CA 27, 2007-Ohio-1959, ¶ 15. Accordingly, a motion in limine does not preserve for purposes of appeal any error in the disposition of the motion in limine. The issue must be raised at trial. *Id.* Thus, the failure to file a motion in limine cannot be ineffective because it cannot prejudice a defendant, as the issue still must be raised and decided at trial.

pocket and that he did not have a permit to carry the weapon. Thus, even if the drug testimony had not been admitted, overwhelming evidence indicated appellant's guilt.

### III. Conclusion

{¶ 25} Appellant has not demonstrated the ineffective assistance of counsel. Accordingly, we overrule his single assignment of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN and BRUNNER, JJ., concur.