[Cite as *State ex rel. Brust v. Mohr*, 2018-Ohio-1067.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Shawn K. Brust, | : | |
| Relator, | : | |
| v. | : | No. 17AP-275 |
| Gary Mohr, Director of the Ohio Department of Rehabilitation and Correction et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 23, 2018

*Shawn K. Brust,* pro se.

*Michael DeWine,* Attorney General, and *Byron D. Turner,* for respondents.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

TYACK, J.

{¶ 1}  Shawn K. Brust filed this action in mandamus, seeking a writ to compel the Ohio Department of Rehabilitation and Correction to make changes in his Ohio Parole Board Information Sheet.

{¶ 2}  In accord with Loc.R. 13(M) of the Tenth District Court of Appeals, the case was referred to a magistrate to conduct appropriate proceedings.  The parties stipulated the pertinent evidence and filed briefs.  The magistrate then issued a magistrate's decision, appended hereto, which contains detailed findings of fact and conclusions of law.  The magistrate's decision indicates that one error alleged by Brust has been corrected and that there is no clear legal duty to make more changes.

{¶ 3}   Brust has filed objections to the magistrate's decision.  The case is now before the court for a full, independent review.

{¶ 4}   Brust acknowledges that one of the four factual inaccuracies he alleged has now been corrected.  The remaining three factual issues are apparently related to factual issues presented at his trial.

{¶ 5}   Brust states that he shot the victim one time in the leg and that the victim died four days later.  He seems to be contesting whether his shooting of the victim was a proximate cause of the victim's death.  The case law on proximate cause is not favorable to Brust.  If you do serious harm to someone necessitating hospitalization and further medical treatment, the fact that you shot the person is still a proximate cause of the victim's death, even if better treatment might have saved the life of the victim.  Brust cannot prevail on this factual issue.

{¶ 6}   The second factual issue involves whether Brust's statements prior to the shooting constitute bragging.  Brust states now that he stated then that he was going back to confront the people who pulled a gun on him, and get his money and/or drugs back.  Brust acknowledges that he was taking a gun to confront a person or persons who were also armed.  The fact that shooting erupted comes as no surprise.  Going looking for someone who pulled a gun on you while armed yourself is planning on having an armed conflict.  In legalese, Brust had prior calculation and design to engage in armed conflict.  Someone died following that plan for conflict.

{¶ 7}   We do not find that our magistrate erred in her magistrate's decision finding that Brust was not entitled to the specific factual changes he sought and seeks.  We overrule the objections to the magistrate's decision.  We adopt the findings of fact and conclusions of law in the magistrate's decision and deny the request for a writ of mandamus.

*Objections overruled; writ denied.*

DORRIAN and LUPER SCHUSTER, JJ., concur
in judgment only.

# A P P E N D I X

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Shawn K. Brust, | : | |
| Relator, | : | |
| v. | : | No. 17AP-275 |
| Gary Mohr, Director of the Ohio Department of Rehabilitation and Correction et al., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on November 22, 2017

*Shawn K. Brust,* pro se.

*Michael DeWine,* Attorney General, and *Byron D. Turner,* for respondents.

## IN MANDAMUS

{¶ 8} Relator, Shawn K. Brust, has filed this original action requesting this court issue a writ of mandamus ordering respondent Gary Mohr, director of the Ohio Department of Rehabilitation and Correction ("ODRC") and Andre Imbrogno, chairman of the Ohio Parole Board ("parole board"), to correct inaccuracies in the record which the parole board has used to deny him parole, pursuant to the Supreme Court of Ohio's decision in *State ex rel. Keith v. Ohio Adult Parole Auth.,* 141 Ohio St.3d 375, 2014-Ohio-4270, and ordering the parole board to reconsider his suitability for parole.

Findings of Fact:

{¶ 9} 1. Relator is an inmate currently incarcerated at Marion Correctional Institution.

{¶ 10} 2. Relator was arrested and charged with one count of aggravated murder in violation of R.C. 2903.01 with two firearm specifications: one under R.C. 2941.145, a second pursuant to R.C. 2941.146 asserting relator discharged a firearm from a motor vehicle (drive-by specification). Essentially, relator was charged with having shot and killed Anthony Truff on August 5, 1997 as relator drove by him on a street in Urbancrest, Ohio.

{¶ 11} 3. Relator was found not guilty of the aggravated murder charge, but guilty of the lesser-included offense of murder. Relator was also found guilty of the first firearm specification, but not guilty of the drive-by specification. The trial court sentenced relator accordingly.

{¶ 12} 4. Relator's appeal of his conviction was upheld by this court in *State v. Brust,* 10th Dist. No. 99AP-509 (Mar. 28, 2000). In his fourth assignment of error, relator argued that the trial court erred in denying his motions for acquittal. This court's discussion of this particular assignment of error is relevant to relator's mandamus action. Specifically, in denying this assignment of error, this court stated:

> Crim.R. 29(A) requires the court to enter a judgment of acquittal if the evidence is insufficient to sustain a conviction of the offenses alleged in the indictment. "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal where the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Apanovitch* (1987), 33 Ohio St.3d 19, 23, 514 N.E.2d 394. In reviewing a ruling on a Crim.R. 29(A) motion for judgment of acquittal, the reviewing court construes the evidence in a light most favorable to the state. *State v. Wolfe* (1988), 51 Ohio App.3d 215, 555 N.E.2d 689, paragraph one of the syllabus; *State v. Busby*, 1999 Ohio App. LEXIS 4222 (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported.
>
> At the end of the prosecution's case-in-chief, defendant moved for a judgment of acquittal on the basis that the state presented no evidence to support the drive-by specification and no evidence of premeditation or intent. After the defense's presentation of evidence, defendant renewed his request for a

judgment of acquittal, reiterating the same premises and adding the contention that Truss' wound was not the cause of his death. Similarly, after the jury's guilty verdict, defendant again moved for a judgment of acquittal, pursuant to Crim.R. 29(C), on the same grounds: the state failed to prove defendant acted purposely and the gunshot wound did not cause Truss' death.

In both the offense of aggravated murder and murder, the prosecution is required to prove beyond a reasonable doubt that defendant purposely caused the death of another. R.C. 2903.01; R.C. 2903.02. Purposely is defined in R.C. 2901.22(A):

A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

Purpose or intent can be established by circumstantial evidence, *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, and by the surrounding facts and circumstances in the case. *Lott*, supra. These circumstances include the means or weapon used, its tendency to destroy life if designed for that purpose, and the manner in which the wounds are inflicted. *State v. Robinson* (1954), 161 Ohio St. 213, 118 N.E.2d 517; *Busby*, supra. The specific intent to kill may be reasonably inferred from the fact that a firearm is an inherently dangerous instrument, the use of which is likely to produce death. *State v. Mackey* (Dec. 9, 1999), Cuyahoga App. No. 75300, unreported, citing *State v. Widner* (1982), 69 Ohio St.2d 267, 431 N.E.2d 1025 (finding purpose to kill in passenger's firing gun at individual from moving vehicle); *State v. Dunlap* (1995), 73 Ohio St.3d 308, 316, 652 N.E.2d 988.

Defendant argues that whoever shot Truss did not intend for him to die, as Truss was shot in his right leg, a "non-vital" area of the body, and that an inference of intent to kill should not be allowed simply because a gun was used. *State v. Pleasant*, 1996 Ohio App. LEXIS 1572 (Apr. 17, 1996), Lawrence App. No. 94-CA-39, unreported. However, in *Pleasant*, the court twice noted that defendant testified he did not intend to kill the victim. He also testified that he only struck the victim once and that he did not think the wound was fatal. The evidence

thus was sufficient to allow a jury to reasonably find that defendant did not intend to kill, but did intend to cause physical harm, rendering the trial court's instruction on the lesser included offense of involuntary manslaughter appropriate. By contrast, defendant here did not testify. Moreover, unlike *Pleasant*, where the defendant there used a club, defendant here fired a gun at Truss.

Defendant nonetheless contends Dr. Fardal's testimony supports a finding that the person who shot Truss acted "knowingly," but not purposely. The coroner, Dr. Fardal, testified that the bullet entered Truss' right thigh with a slightly upward and back trajectory. In leaving Truss' right leg, the bullet injured his right femoral artery before going through his scrotum and eventually passing to his left side. Truss suffered extensive bleeding both externally and internally. Fardal testified that, given the injuries he saw, Truss would likely lose a third of his blood, enough to effect his brain within ten minutes of being shot. Fardal's final medical opinion was that Truss died due to a diffuse hypoxic brain injury, or the lack of oxygen to the brain, caused by the loss of blood as a result of the gunshot wound. Fardal, however, also testified that the wound was survivable, and in most circumstances the worst outcome would be the loss of a limb. In fact, Fardal testified that Truss should have survived the wound.

The medical evidence, coupled with the remaining evidence and construed in favor of the state, indicates that defendant told a bartender he was going to get his gun, go back to Urbancrest and get his drugs or his money. The day of the shooting, defendant went to the pawnshop where he had pawned a gun and bought it. He then went to Urbancrest, where Truss was struck with a bullet from a .38 special caliber revolver fired from no less than two to three feet away. The gun, introduced at trial, was identified by workers at the pawn shop as the one that defendant pawned and redeemed that day.

From that evidence, reasonable minds could reach different conclusions on whether the prosecution proved beyond a reasonable doubt that defendant acted purposely. " The trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death." *State v. Turner*, 1997 Ohio App. LEXIS 6021 (Dec. 30, 1997), Franklin App.

No. 97AP-709, unreported (finding sufficient evidence of intent to kill in firing a gun from an automobile at a group of individuals) citing *Robinson*, supra, paragraph five of the syllabus. "The act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *Id.*, quoting *State v. Brown* (Feb. 29, 1996), Cuyahoga App. No. 68761, unreported; cf. *State v. Smith* (1993), 89 Ohio App.3d 497, 501, 624 N.E.2d 1114 (finding that pointing gun at a group of people less than twenty feet away and shooting at least one shot could be used by the trier of fact as proof of intention to kill). The evidence was sufficient to allow the jury here to infer that defendant acted with purpose or intent to kill. The issue was properly presented to the jury for consideration.

Defendant also contends the state presented insufficient evidence to prove beyond a reasonable doubt that defendant caused Truss' death. Defendant argues that Truss would have survived but for the grossly negligent medical treatment Truss received that day. In support, defendant cites the testimony of his expert witness, Dr. David DeHart, who testified that the treatment Truss received was gross maltreatment, even bordering on recklessness, and was the sole cause of Truss' death.

"It is the general rule that one who inflicts injury upon another is criminally responsible for that person's death, regardless of whether different or more skillful medical treatment may have saved his life. This rule has been qualified where there has been a gross or willful maltreatment of the patient by the medical personnel, which is shown to have been an independent intervening cause of the patient's death." *State v. Johnson* (1978), 56 Ohio St.2d 35, 40, 381 N.E.2d 637 (citations omitted). Simple negligence is not enough. *State v. Beaver* (1997), 119 Ohio App.3d 385, 394, 695 N.E.2d 332.

Contrary to DeHart's testimony, Fardal testified that Truss bled internally as well as externally, and that the main loss of blood came from an injury to the right femoral artery. While Fardal testified that people survive such a wound, he noted survival depends on a lot of factors, but primarily how much blood is lost. According to Fardal, without treatment Truss would have bled to death in twenty to thirty minutes, unless he stopped the bleeding on his own; after only ten minutes of bleeding, Truss would have suffered brain damage. Fardal

then stated the cause of death: the gunshot wound that caused Truss to lose blood, which in turn caused oxygen deprivation.

A coroner is an expert witness who is permitted to give an opinion on matters within his scope of expertise. *State v. Cousin* (1982), 5 Ohio App.3d 32, 449 N.E.2d 32, limited by *State ex rel. Blair v. Balraj* (1994), 69 Ohio St.3d 310, 312, 631 N.E.2d 1044. The testimony of a coroner that details the possible cause of death is sufficient evidence to sustain a homicide conviction. *State v. Heinish* (1990), 50 Ohio St.3d 231, 235, 553 N.E.2d 1026, citing *State v. Manago* (1974), 38 Ohio St.2d 223, 227, 313 N.E.2d 10. Fardal's testimony was sufficient evidence to prove that defendant caused Truss' death.

Given DeHart's testimony, defendant nonetheless attacks the paramedic's using MAST trousers instead of applying direct pressure to Truss' wound, and contends the evidence supports reversal. Paramedic Perry testified he used the MAST trousers because Truss was no longer actively bleeding and Perry wanted Truss' remaining blood to be directed toward his heart and lungs. Had Truss been actively bleeding, he would not have used the MAST trousers.

As a result, despite the testimony of defendant's expert that the medical treatment Truss received was gross maltreatment and the cause of his death, the jury heard conflicting testimony from Perry, who testified that he felt the paramedics acted appropriately. Weight and credibility questions are primarily for the trier of fact. *DeHass*, supra, paragraph one of the syllabus. Viewing Perry's testimony in the light most favorable to the prosecution, the evidence is such that reasonable minds could reach different conclusions on whether the prosecution proved that Truss' death was caused by the gunshot wound, or whether the treatment that Truss received was so grossly negligent that it became an independent intervening cause of Truss' death. The trial court properly denied defendant's motions for acquittal. Defendant's fourth assignment of error is overruled.

*Id.*

{¶ 13} One judge dissented specifically stating that, in his opinion, the evidence did not demonstrate that relator acted with a purpose to kill. Specifically, the dissent stated:

A summary of a witness's prior statement which materially deviates from in-court testimony should be provided whether the summary is a statement or not. Either way, the content of the summary is " *** evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment *** " for purposes of Crim.R. 16(B)(1)(f). Crim. R. 16(D) imposes on the prosecution a continuing duty to disclose such evidence when discovered "before or during" trial. A failure to enforce this duty strikes at the very core of the fairness we expect to be present in our criminal trials.

I also believe that the trial court erred in finding the evidence sufficient to support a conviction for murder, as opposed to involuntary manslaughter with a firearm specification. The evidence simply did not demonstrate that Mr. Brust acted with a purpose to kill.

In his statements prior to the shooting, Mr. Brust never threatened to kill anyone. Instead, Mr. Brust stated that he was going back to confront the people who had earlier pulled a gun on him and that he was going to get his money or his drugs. The fact that he returned with a firearm to confront people who had earlier used a gun to rob him is not proof of an intention to kill.

Further, the gunshot wound was inflicted in an area of the body which would not indicate an intention to kill. The shot entered the right thigh of the victim, not the trunk and not the head. Only a single bullet wound was inflicted, not several. The coroner who performed the autopsy testified that the victim should have survived the wound.

After the shooting occurred, the victim refused medical treatment for several minutes. He refused to take even rudimentary steps to help his chances of survival, such as lying down and applying pressure to his wounds. Instead, he remained upright, walking around while bleeding.

After emergency personnel arrived, they made a very questionable judgment call as to their treatment. Instead of locating the wounds and applying pressure while transporting the victim to the hospital, they placed MAST pants or trousers on the victim. The result seems to have been to squeeze even more blood out of the victim while he was being transported to the hospital. The victim died from blood loss.

> I do not doubt that Mr. Brust shot the victim and that the shooting was a proximate cause of the victim's death. As a result, I believe that Mr. Brust was guilty of involuntary manslaughter with a firearm specification, a serious felony in and of itself. However, I do not believe that the evidence supports a finding that Mr. Brust had a specific intention to cause the victim's death. I, therefore, would sustain the fourth assignment of error in part.

*Id.* at 40-42.

{¶ 14} 5. On July 22, 2015, the parole board conducted a hearing where it determined that relator was "not suitable for release and is assessed a 5 year continuance."

{¶ 15} 6. The parole board information sheet which was provided to the parole board members provided the following details of the offense:

> On 8/5/97, the inmate shot and killed the male victim. The victim was riding his bicycle at the intersection of Agustus Court and Urban Hollow Court in Columbus when the inmate shot him from his tan Isuzu Trooper. On 8/17/97, the Franklin County Sheriff's Office received information that the inmate was the shooter. The next day, deputies searched his parent's house and found the gun that was used in the murder. A short time before the shooting, the inmate was heard bragging about going to the Urbancrest area to get some people back for pulling a gun on him.

{¶ 16} 7. Relator pursued administrative remedies in hopes of convincing the parole board to reconsider its decision to deny him parole. Relator's attempts failed.

{¶ 17} 8. On April 20, 2017, relator filed the instant mandamus action requesting this court order the parole board to correct what he asserts are factual inaccuracies in the records upon which the parole board has relied to deny him parole and to conduct a new parole hearing. Specifically, relator asserts the following four errors exist on the parole board's information sheet and suggests the following corrections:

> Error 1: The (O.P.B.I.S.), states: "On 8-5-97, the inmate shot and killed the male victim."
>
> Factual Clarification of Error 1: The (O.P.B.I.S.) should contain the facts in the record: On 8-5-97, the inmate shot the

male victim one time in the leg. The victim subsequently died four (4) days afterwards on 8-9-97. * * *

Error 2: The (O.P.B.I.S.), states "The inmate shot him from his tan Isuzu Trooper."

Factual Clarification of Error 2: The (O.P.B.I.S.), should contain the facts in the record: A trial by jury revealed after a week of testimony and evidence presented, that the accused "did not cause or attempt to cause physical harm to another by discharging a firearm from a motor vehicle." * * *

Error 3: The (O.P.B.I.S.), states: "A short time before the shooting the inmate was heard bragging about going to the Urbancrest area to get some people back for pulling a gun on him."

Factual Clarification of Error 3: The (O.P.B.I.S.), should contain the facts in the record: In his statements prior to the shooting, Mr. Brust never made any threats, nor was he heard "bragging." Mr. Brust stated that he was going back to confront the people who had earlier pulled a gun on him and that he was going to "get his money or drugs back." * * *

Error 4: Offender Background Information (O.B.I.) report, as stated in paragraph 5; states: "On 8-5-97, Anthony Truss was gunned down while riding his bicycle."

Factual Clarification of Error 4: The (O.B.I.), should contain the facts in the record: "The victim was conversive and responsive, he remained upright, walking around and refused medical treatment for several minutes after Paramedics arrival on the scene. The victim was an adult, male, 6' tall, 209 lbs."

(Emphasis omitted.)

{¶ 18} 9. Prior to the filing of his mandamus action, respondent did correct what relator has identified as the second error. Specifically, respondent removed the language from the parole board's information sheet which had indicated that relator shot the victim "from his tan Isuzu Trooper." The parole board information sheet now provides the following details of the offense:

On 8/5/97, the inmate shot and killed the male victim. The victim was riding his bicycle at the intersection of Agustus Court and Urban Hollow Court in Columbus when the inmate shot him. On 8/17/97, the Franklin County Sheriff's Office received information that the inmate was the shooter. The next day, deputies searched his parent's house and found the gun that was used in the murder. A short time before the shooting, the inmate was heard bragging about going to the Urbancrest area to get some people back for pulling a gun on him.

{¶ 19} 10. Also prior to the filing of relator's mandamus action, in a letter dated April 4, 2017, relator was notified by respondent of this correction:

Attorney Ashley Parriman in DRC Office of Legal Services forwarded your correspondence dated March 22, 2017 to our office for review and response.

After reviewing the contents of your information sheet dated May 6, 2015, our office has updated your information sheet to remove the wording "from his tan Isuzu Trooper" from the document. We removed this language from the information sheet because the jury did not find you guilty of a drive-by specification. Copies of the amended and voided decision sheets have been saved to your parole board file. I have also enclosed a copy of these documents so that you may have them for your records.

Please note that the removal of this language from your information sheet **does not** impact the Board's continuance decision. the Board will consider you for release consideration in June 2020 (April 2020 actual). A copy of your letter and my response to you has been placed in your file.

(Emphasis sic.)

{¶ 20} 11. On October 20, 2017, respondent filed a motion to supplement the evidence which was granted. The supplemental evidence indicates that a new hearing was scheduled for October 11, 2017. However, by letter dated September 10, 2017, relator notified respondent that he would not attend, stating:

It is with much regret that I am compelled to inform each parole board member of my present inability to participate in my tentatively scheduled October 2017 consideration for suitability hearing. I do not feel it would be prudent to actively

participate in a suitability hearing where there are several known inaccuracies contained within the known existing parole board files. This detrimental information is simultaneously being disputed in a Court of Law.

I do wish all of the parole board members to know the extent of my efforts, as I have endeavored to convey the facts of my criminal conduct to accurately reflect what actually occurred in this case repeatedly through various methods since September 2014 until the present time.

Unfortunately, I have exhausted every possible means of administrative reconciliation without success and therefore cannot actively participate in this October 2017 suitability hearing.

Thank you for your consideration in this consequential matter.

{¶ 21} 12. The matter is currently before the magistrate.

Conclusions of Law:

{¶ 22} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 23} As noted previously, relator cites the Supreme Court of Ohio's decision in *Keith* in support of his argument. Bernard Keith had filed a mandamus action asserting that the parole board was required to correct erroneous information contained in his records regarding the number of times he had been paroled, as well as other alleged inaccuracies. In finding that a writ of mandamus was appropriate, the *Keith* court stated:

A prisoner has no constitutional or statutory right to parole. *State ex rel. Henderson v. Ohio Dept. of Rehab. & Corr.,* 81 Ohio St.3d 267, 268, 1998 Ohio 631, 690 N.E.2d 887 (1998). Because there is no such right, a prisoner who is denied parole is not deprived of liberty as long as state law makes the parole decision discretionary. *Id.* at 125. Under R.C. 2967.03, the parole decision in Ohio is discretionary. Id. And we have held that because a potential parolee was not deprived of life, liberty, or property by being denied parole, he could not

invoke due process to challenge his allegedly inaccurate scoresheet. *State ex rel. Hattie v. Goldhardt,* 69 Ohio St.3d 123, 126, 1994 Ohio 81, 630 N.E.2d 696 (1994). Therefore, relying upon that authority, the court of appeals was not unreasonable in concluding that the parole board had no clear legal duty to correct Keith's records. *Id.*

Keith cites *Layne v. Ohio Adult Parole Auth.,* 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, to support his argument that he has a right to a corrected record. * * *

*  *  * Layne* establishes a minimal standard for the OAPA, that is, that statutory language "ought to mean something." *Id.* at ¶ 27. At issue in *Layne* were the words "eligible for parole" in former R.C. 2967.13(A). We held there that inherent in the language is "the expectation that a criminal offender will receive meaningful consideration for parole." *Id.*

* * *

Inherent in the language of Ohio Adm.Code 5120:1-1-07(B) is that the board must consider various reports and "other relevant written information" pertaining to the inmate whose parole is being considered. The existence of this formal process for considering parole rightly gives parolees some expectation that they are to be judged on *their own* substantively correct reports. Requiring the board to consider specific factors to determine the parolee's fitness for release would not mean anything if the board is permitted to rely on incorrect, and therefore irrelevant, information about a particular candidate.

* * *

* * * [H]aving set up the system and defined at least some of the factors to be considered in the parole decision, the state has created a minimal due-process expectation that the factors considered at a parole hearing are to be as described in the statute or rule and are to actually and accurately pertain to the prisoner whose parole is being considered.

We recognize that the OAPA's discretion in parole matters is wide-ranging. *Layne*, 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548, ¶ 28, citing *State ex rel. Lipschutz v. Shoemaker*, 49 Ohio St.3d 88, 90, 551 N.E.2d 160 (1990). R.C. 2967.03 vests discretion in OAPA to "grant a parole to

any prisoner for whom parole is authorized, if in its judgment there is reasonable ground to believe that * * * paroling the prisoner would further the interests of justice and be consistent with the welfare and security of society." However, as in *Layne*, that discretion must yield to statutory or regulatory requirements. Therefore, we hold that in any parole determination involving indeterminate sentencing, the OAPA may not rely on information that it knows or has reason to know is inaccurate.

This is not to say that the OAPA must conduct an extensive investigation on the information it reviews for every prisoner to ensure accuracy, nor does it mean that the OAPA must credit every unsupported allegation by a prisoner that the information is inaccurate.

But where there are credible allegations, supported by evidence, that the materials relied on at a parole hearing were substantively inaccurate, the OAPA has an obligation to investigate and correct any significant errors in the record of the prisoner.

(Emphasis sic.) *Keith* at ¶ 19-28.

{¶ 24} In the present case, respondent has removed from the information sheet the language indicating that relator shot the victim "from his tan Isuzu Trooper." This corresponds with the jury's determination finding relator not guilty of the drive-by specification. In as much as the evidence demonstrated that the materials relied on at the parole hearing were substantially inaccurate, respondent corrected this error.

{¶ 25} However, as the *Keith* court stated, there is no requirement to conduct an extensive investigation or credit unsupported allegations by a prisoner that information is inaccurate. With regard to the remaining three errors which relator alleges are contained in his records, relator is essentially arguing that the evidence was insufficient to establish the intent to kill and, further, that the medical evidence demonstrated that the victim would have lived if he would have accepted and received proper medical attention. The problem with relator's argument is that the jury, the trial judge, and the majority of this court concluded that there was sufficient evidence in the record from which the jury could determine that relator was guilty of murder and not involuntary manslaughter as relator asserts. The language to which relator objects does not constitute an error; instead, it is a

matter of wording which, on review of the facts, is consistent with the evidence presented at trial.

{¶ 26} In the present case, the magistrate finds that respondent has corrected the error contained within relator's records thereby rendering that issue moot. Regarding the remaining alleged errors, the magistrate finds that relator has not demonstrated that respondent has a clear legal duty to make the changes relator suggests and, as such, this court should deny his request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).