[Cite as *State v. McCall*, 2021-Ohio-1032.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                                   :

      Plaintiff-Appellee,              :               No. 18AP-932
                                                                               (C.P.C. No. 16CR-7124)
v.                                                                 :
                                                                             (REGULAR CALENDAR)
Jakobe R. McCall,                                       :

      Defendant-Appellant.           :

---

D E C I S I O N

Rendered on March 30, 2021

---

**On brief:** [*Janet Grubb,* First Assistant Prosecuting Attorney], and *Kimberly M. Bond*, for appellee.

**On brief:** *Siewert & Gjostein Co. LPA,* and *Thomas A. Gjostein*, for appellant. **Argued:** *Thomas A. Gjostein.*

---

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Jakobe R. McCall, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of murder and tampering with evidence. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} This case arises from the murder of Naika Brown on December 15, 2016. One week after the murder, the Franklin County Grand Jury indicted McCall on two counts of murder in violation of R.C. 2903.02, unspecified felonies, with a firearm specification as to both counts, and one count of tampering with evidence in violation of R.C. 2921.12, a third-degree felony. McCall initially pleaded guilty to the stipulated lesser-included offense of voluntary manslaughter in violation of R.C. 2903.03, a third-degree felony, with a firearm

specification, and the tampering with evidence count as charged. In April 2018, McCall moved to withdraw his guilty plea. The trial court granted the motion, and the matter proceeded to a jury trial in September 2018. As pertinent to this appeal, the following evidence was adduced at trial.

{¶ 3} Columbus Police Officer Ryan McKee testified that he was the first to arrive at the scene of Brown's murder, 2853 Citizens Place, Columbus, Ohio. Officer McKee found Brown face down in the apartment hallway. Brown had blood coming from her head and showed no sign of life. She was pronounced dead at the scene. Officer McKee and another officer cleared the area to ensure the shooter was not still present. There was no sign of forced entry at the apartment, and no firearm was recovered as part of the investigation.

{¶ 4} Kelby Ducat, a firearms expert employed at the Columbus Police Crime Laboratory, testified regarding the operation of a semiautomatic pistol and the bullet fragment recovered from Brown's body. Ducat testified that such a weapon is prepared for firing by "racking" it. (Tr. Vol. 3 at 327.) Racking involves pulling back on the slide at the top portion of the weapon, which sets the striker, and the slide's forward motion loads the cartridge into the chamber. This action produces a metal on metal sound. The weapon will then fire when force is applied to pull the trigger. Ducat identified the bullet fragment recovered from the victim as a .40 caliber bullet fragment, and the rifling on the fragment was consistent with being fired from a Smith & Wesson. A spent .40 caliber cartridge casing was recovered at the scene of the shooting.

{¶ 5} John Daniels, M.D., a deputy coroner at the Franklin County Coroner's Office, testified regarding the autopsy of Brown. Daniels did not conduct the autopsy, but he reviewed the autopsy report and photographs of the deceased. He testified that Brown was killed by a single gunshot to her forehead caused by another. He opined that the characteristics of the stippling on her forehead indicated that the distance from the weapon fired to her forehead was very short, likely between six and eight inches. While there was cocaine in Brown's system at the time of her death, its presence did not contribute to her death.

{¶ 6} Korey Jones, a daughter of Brown, testified to the following. In October 2016, Jones purchased a .40 caliber Smith & Wesson handgun for protection. She kept the firearm hidden in her closet because her mother, with whom she was residing with at the

time, did not want any firearms in the apartment. Jones placed the handgun in a backpack when she moved out of Brown's apartment, but she did not physically see it after she moved. A few days before the murder, McCall, Jones' cousin, began to reside with Brown. Jones, who then resided a few buildings away, was in an ongoing dispute with McCall regarding a video game that belonged to McCall.

{¶ 7} Jones further testified that, at approximately 4:00 a.m. on December 15, 2016, McCall sent several threatening text messages to her, blaming her for taking the video game and demanding its return. Also during the early hours of December 15, 2016, Jones realized the firearm she had purchased was missing when she talked with her mother who indicated she was "dealing with the gun" with McCall. (Tr. Vol. 2 at 140.) Jones told Brown she was going to contact the police about the stolen firearm, which she did. After the shooting, Jones visited McCall at the jail to find out what happened. McCall did not want to talk about the shooting and cursed at Jones. At trial, Jones was presented with a photograph, retrieved from McCall's phone, of McCall holding a handgun. Jones testified that the handgun appeared to be the one she had purchased.

{¶ 8} Keondra Horace, Brown's niece, was at Brown's apartment at the time of the shooting, and she testified as follows. She began living there in November 2016. At approximately 2:30 a.m. on December 15, 2016, Horace and McCall returned to the apartment after their work shifts. Horace arrived first, and Brown told her to let her know when McCall arrived. By the time McCall arrived, however, Brown was in her room asleep. Horace and McCall prepared food to eat, and McCall said he needed to retrieve a firearm in case Brown woke and looked in his belongings. Horace saw McCall put a silver and black handgun in his pocket. Horace previously had seen McCall with this firearm, and she considered it to be both Jones' and McCall's weapon. After Horace and McCall finished eating, Horace went into her room to lay down and McCall laid down on the living room couch. Horace then heard Brown exit her room. She heard McCall blaming Jones and Brown for the video game disappearing. Horace could hear the two moving from the living room into the hallway in front of Horace's bedroom. No one else was at the apartment or involved in the argument.

{¶ 9} According to Horace's testimony, at some point during the argument between Brown and McCall, the firearm issue was raised. Brown told McCall to leave because he

had the firearm, and she repeatedly told him she was going to call the police. Within seconds, Horace heard the "distinctive" sound of a firearm being "racked," which she had heard previously, and then quickly fired once. (Tr. Vol. 2 at 218.) About 30 seconds later, McCall entered Horace's room with the firearm in his back pocket. McCall said, "I freaked out. I freaked out. She said she was going to call the police on me. I freaked out." (Tr. Vol. 2 at 220.) McCall then put on additional layers of clothing, preparing to go outside. Horace had her phone in one hand and McCall's phone in the other. She could not call 911 on her phone, so she used McCall's phone to call his mother and tell her what had happened. McCall then said, "Are you going to tell them it was me, or are you going to tell them somebody else came in here?" (Tr. Vol. 2 at 222.) When they both left the apartment, McCall went in one direction, and Horace ran in the opposite direction toward her father's residence to call the police. Days later, after McCall's arrest, Horace went with Jones to the jail to see McCall. Jones asked McCall, "Why did you do it?" and McCall replied, "You stole my game; you stole my shit." (Tr. Vol. 2 at 229-30.)

{¶ 10} The jury found McCall guilty as charged. The murder counts merged for the purpose of sentencing, and the state elected to have McCall sentenced on Count 1. The trial court sentenced McCall to 15 years to life in prison for the murder conviction, with a consecutive term of 3 years for the firearm specification. The trial court also imposed a sentence of 12 months in prison for the tampering with evidence conviction, to be served concurrently with the murder conviction sentence.

{¶ 11} McCall timely appeals.

## II. Assignments of Error

{¶ 12} McCall assigns the following errors for our review:

> [1.] The appellant had his rights to due process of law violated under Article I, Section 10 of the Ohio Constitution and the Sixth Amendment of the United States Constitution, when trial counsel was rendered ineffective for failing to make the proper motion for a Rule 29 acquittal and for not moving in limine against appellant's statements.

> [2.] Appellant's conviction[s] [were] not supported by the sufficiency of the evidence in violation of the due process clause of the Fourteenth Amendment to the U.S. Constitution and Article I, Sections 1 & 16 of the Ohio Constitution and the

conviction[s] [were] also against the manifest weight of the evidence.

## III. Discussion

{¶ 13} Because they involve related issues, we analyze together McCall's first and second assignments of error. In his first assignment of error, McCall alleges he was denied effective assistance of trial counsel. His second assignment of error contends his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. Both assignments of error lack merit.

{¶ 14} In order to prevail on a claim of ineffective assistance of counsel, McCall must satisfy a two-prong test. First, he must demonstrate that his counsel's performance was deficient. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This first prong requires McCall to show that his counsel committed errors which were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* If McCall can so demonstrate, he must then establish that he was prejudiced by the deficient performance. *Id.* To show prejudice, McCall must establish there is a reasonable probability that, but for his counsel's errors, the result of the trial would have been different. A "reasonable probability" is one sufficient to undermine confidence in the outcome of the trial. *Id.* at 694.

{¶ 15} In considering claims of ineffective assistance of counsel, courts indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 101. McCall contends his trial counsel was ineffective in (1) not filing a motion in limine to exclude testimony regarding certain statements he made immediately after Brown's murder and later during a jail visit with Keondra Horace and Korey Jones; and (2) not moving for an acquittal under Crim.R. 29 once the state rested.

{¶ 16} McCall argues his trial counsel should have filed a motion in limine to exclude testimony regarding his statements pursuant to Evid.R. 403(A) and (B). These statements include McCall telling Horace that he "freaked out" because Brown was going to call the police, McCall asking Horace if she was going to identify him or someone else as the shooter, and McCall informing Jones that he shot Brown because his video game had been taken. A decision not to file a motion in limine cannot be considered ineffective under the

*Strickland* test because the issue still must be raised and decided at trial. *State v. Valentine*, 10th Dist. No. 14AP-893, 2016-Ohio-277, ¶ 22, fn. 2. "As a pretrial, preliminary, anticipatory ruling, finality does not attach when a motion in limine is decided." *Id.*, citing *Columbus v. Zimmerman*, 10th Dist. No. 14AP-963, 2015-Ohio-3488, ¶ 9, citing *State v. Simpson*, 5th Dist. No. 06 CA 27, 2007-Ohio-1959, ¶ 15. Thus, we are unpersuaded that McCall's trial counsel was ineffective in not filing a motion in limine concerning his pretrial statements.

{¶ 17} Moreover, even insofar as McCall argues his counsel should have objected at trial to the testimony regarding his statements, this argument is unpersuasive. According to McCall, any probative value of the testimony was substantially outweighed by its tendency to cause undue prejudice and to mislead the jury. He also asserts the testimony regarding his statements at the jail to Jones and Horace were unduly prejudicial and cumulative. But he does not explain why the testimony was unduly prejudicial, misleading, or cumulative, other than to argue the harmful effect of the jury knowing he was in jail after the shooting. In support of this contention, McCall cites *Estelle v. Williams*, 425 U.S. 501, 504 (1976), wherein the court held that "an accused should not be compelled to go to trial in prison or jail clothing because of the possible impairment of the presumption so basic to the adversary system." The extension of this holding to the case at bar is not warranted. The Supreme Court of Ohio has noted that "it is self-evident" that a defendant on trial for murder has "been arrested. Evidence about a defendant's arrest and ensuing custody does not contravene the presumption of innocence." *State v. Williams*, 99 Ohio St.3d 439, 2003-Ohio-4164, ¶ 75. Thus, the passing references to McCall being in jail after the shooting, in the context of witnesses explaining his response to their inquiry regarding the shooting, were not unduly prejudicial. *See State v. Hodge*, 10th Dist. No. 18AP-95, 2019-Ohio-4012, ¶ 47 ("stray remarks related to a defendant's pretrial detention" found not unduly prejudicial). Thus, McCall fails to demonstrate his trial counsel was deficient as to the admission of testimony concerning his incriminating statements.

{¶ 18} Nor was McCall's trial counsel deficient in not moving for an acquittal under Crim.R. 29. "Defense counsel's failure to make a Crim.R. 29 motion for acquittal is not ineffective assistance of counsel where such a motion would have been futile." *State v. Wallace*, 10th Dist. No. 08AP-2, 2008-Ohio-5260, ¶ 63. Pursuant to Crim.R. 29, "[t]he

court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." This means the trial court may grant a Crim.R. 29 motion only where, construing the evidence most strongly in the state's favor, the evidence is insufficient to sustain a conviction. *Wallace* at ¶ 63, citing *State v. Jenks*, 61 Ohio St.3d 259 (1991). Thus, a Crim.R. 29(A) motion for judgment of acquittal tests the sufficiency of the evidence. *State v. Black*, 10th Dist. No. 19AP-637, 2021-Ohio-676, ¶ 16. The sufficiency of the evidence issue is also raised by McCall's second assignment of error.

{¶ 19} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37. "[I]n a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.

{¶ 20} McCall was convicted of committing murder in violation of both R.C. 2903.02(A) and (B). R.C. 2903.02(A) provides that "[n]o person shall purposely cause the death of another." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). "Purpose or intent can be established by circumstantial evidence * * * and by the surrounding facts and circumstances in the case." *State ex rel. Brust v. Mohr*, 10th Dist. No. 17AP-275, 2018-Ohio-1067, ¶ 12. In order to convict a defendant of felony murder in violation of R.C. 2903.02(B), the state must prove the defendant caused the death of another "as a proximate result of the offender's committing or attempting to commit an

offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

{¶ 21} McCall was also convicted of tampering with evidence, in violation of R.C. 2921.12(A)(1), which provides "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation."

{¶ 22} There was no eyewitness to Brown's murder. But the circumstantial evidence presented at trial reasonably leads to the conclusion that McCall purposely shot Brown in the head, killing her. The coroner testified that Brown was killed from a single gunshot to her forehead from a firearm that was approximately six to eight inches away when fired. Horace testified that McCall, Brown, and herself were the only ones in the apartment during the early hours of December 15, 2016. Horace was in her room with the door closed, but she could hear McCall and Brown arguing over a video game and the firearm in McCall's possession. Soon after Brown told McCall she was going to call the police,[1] Horace heard a firearm being racked and then one gunshot. Seconds later, McCall entered Horace's room visibly shaking and said he "freaked out" because Brown was going to contact the police. He also asked Horace whether she was going to tell the police he shot Brown or that someone else shot her. Horace could see the firearm in McCall's pocket, and it appeared to be the one owned by Jones, which was a .40 caliber Smith & Wesson. The spent shell casing found at the shooting scene was for a .40 caliber bullet, and the bullet fragment later recovered from Brown's body had characteristics consistent with being fired from a .40 caliber Smith & Wesson. When Jones asked the jailed McCall why he shot Brown, McCall

---

[1] McCall argues the trial court erred in admitting into evidence Horace's testimony regarding Brown's statements immediately preceding her death. But he does not assign this as error. "This court rules on assignments of error, not mere arguments." *Huntington Natl. Bank v. Burda*, 10th Dist. No. 08AP-658, 2009-Ohio-1752, ¶ 21, citing App.R. 12(A)(1)(b) (stating that "a court of appeals shall * * * [d]etermine the appeal on its merits on the assignments of error set forth in the briefs"). And even if McCall had assigned the admission of this evidence as error, we would overrule it because this challenged testimony was admissible under Evid.R. 803's exceptions to the rule against hearsay (present sense impression, excited utterance, and then existing state of mind, emotion, sensation, or physical condition). *See State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16 ("A trial court has broad discretion over the admission or exclusion of evidence, and a reviewing court generally will not reverse an evidentiary ruling absent an abuse of discretion that materially prejudices the affected party.").

said it was because Jones stole his game. Based on these facts, it was reasonable for the jury to conclude that McCall purposely caused the death of Brown, and Brown's death was the proximate result of McCall committing a first or second-degree felony offense of violence.

{¶ 23} Further, it was reasonable for the jury to conclude that McCall tampered with evidence. The evidence reasonably demonstrated that, after shooting Brown in the head, McCall left the scene with the weapon, even though he would have known an investigation of Brown's death soon would be initiated. Horace saw the firearm on McCall's person immediately after the shooting, and no firearm was found by the police as part of its investigation. It could be inferred from this evidence that McCall took the weapon with him with the intent to impede that investigation.

{¶ 24} Thus, to the extent McCall's second assignment of error challenges the sufficiency of the evidence, it lacks merit. And because McCall cannot satisfy the *Strickland* test based on his trial counsel's decision not to file either a motion in limine regarding his pretrial statements or a motion for a Crim.R. 29 acquittal, his claim of ineffective assistance of trial counsel must fail. Consequently, we overrule McCall's first assignment of error.

{¶ 25} The second issue raised by McCall's second assignment of error is whether his convictions were against the manifest weight of the evidence. Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The jury, or the court in a bench trial, may take note of inconsistencies at trial and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964). Therefore, "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a ' "thirteenth juror" ' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982); *see State v. Tate*, 140 Ohio St.3d 442, 2014-Ohio-3667, ¶ 20 ("a prerequisite for any reversal on manifest-weight grounds is conflicting evidence").

{¶ 26} However, an appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and

determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 27} McCall fails to demonstrate that his convictions were against the manifest weight of the evidence. In support of his manifest weight contention, McCall primarily relies on his sufficiency argument, even though a manifest weight argument is analyzed under a different standard than a sufficiency argument. *State v. Dillon*, 10th Dist. No. 04AP-1211, 2005-Ohio-4124, ¶ 14. Further, McCall fails to identify any testimony or exhibit in the record that conflicts with the evidence supporting the conviction. That is, McCall cites no evidence that weighed against the evidence supporting the convictions. In the absence of such evidence weighing heavily against the convictions, we find no manifest injustice in the jury finding McCall guilty of committing murder and tampering with evidence.

{¶ 28} Because McCall's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, we overrule his second assignment of error.

**IV. Disposition**

{¶ 29} Having overruled McCall's first and second assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

DORRIAN, P.J., and SADLER, J., concur.