[Cite as *State v. Ellis*, 2017-Ohio-1458.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-279 |
| | | (C.P.C. No. 15CR-352) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Kia L. Ellis, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on April 20, 2017

**On brief:** *Ron O'Brien*, Prosecuting Attorney, and *Valerie B. Swanson*, for appellee. **Argued:** *Valerie B. Swanson*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Kia L. Ellis, appeals from a judgment entry of the Franklin County Court of Common Pleas finding her guilty, following a bench trial, of one count of aggravated robbery, one count of aggravated murder, two counts of murder, and one count of tampering with evidence. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} By indictment filed January 26, 2015, plaintiff-appellee, State of Ohio, charged Ellis with one count of aggravated burglary in violation of R.C. 2911.11, a first-degree felony; one count of aggravated robbery in violation of R.C. 2911.01, a first-degree felony; one count of kidnapping in violation of R.C. 2905.01, a first-degree felony; two counts of aggravated murder in violation of R.C. 2903.01, unclassified felonies; two

counts of murder in violation of R.C. 2903.02, unclassified felonies; and one count of tampering with evidence in violation of R.C. 2921.12, a third-degree felony. All eight counts of the indictment related to the beating death of Johnnie Luckett. Ellis entered a plea of not guilty.

{¶ 3} At a bench trial on March 7, 2016, the state presented evidence that on August 2, 2005 officers with the Columbus Division of Police responded to reports of a foul odor and the presence of flies at the Moonglow Apartments and discovered Luckett's badly decomposed body. Luckett's arms and legs were bound to a chair with shoelaces and neckties, and the chair had tipped over. Additionally, there was a belt around Luckett's neck. Police observed blood spatter on the ceiling, walls, blinds, floor, and door of the apartment's living room.

{¶ 4} Additionally, police learned Luckett's vehicle was missing. On August 21, 2005, police located Luckett's vehicle at 3680 East Livingston Avenue, and, after processing the vehicle, observed that the car was "very clean." (Mar. 7, 2016 Tr. at 79.)

{¶ 5} Jane Gorniak, D.O., the Franklin County deputy coroner at the time of Luckett's death, testified that Luckett's autopsy revealed lacerations to Luckett's head, skull fractures, facial fractures, a subdural hemorrhage, and a possible stab wound. Dr. Gorniak stated Luckett's cause of death was "[b]lunt impacts of the head with skull and brain injury." (Tr. at 137.) In Dr. Gorniak's opinion, the location of the blood in the apartment was consistent with Luckett being on the ground when he was hit.

{¶ 6} Jeffrey Broomfield, Ellis' roommate in 2005, testified that there was a period in 2005 when Ellis "disappeared," and he did not know what happened to her. (Tr. at 120.) When he asked her after the fact where she had been, Broomfield testified that Ellis told him she went on a date with someone and "it got * * * a little aggressive" and "she might have played * * * some type of seduction game with him" and "tie[d him] up," but then Ellis "broke down and * * * changed the subject." (Tr. at 120, 121.)

{¶ 7} The lead detective assigned to the case, Detective Stephen Glasure of the homicide department of the Columbus Division of Police, testified that the only information he had regarding a possible suspect upon arriving at the crime scene was that someone at the apartment complex had seen Luckett "with a female black carrying a

twelve pack of beer walking into the apartment, and that was the last anybody had seen him." (Tr. at 147-48.)

{¶ 8} In 2007, following a Crime Stoppers tip, Detective Glasure attempted to locate Ellis but was unsuccessful. Detective Glasure testified his department ran "drivers' licenses, check[ed] with postal services to see if different addresses were popping up," but that police "were always one step behind her." (Tr. at 151.) Then, in January 2015, Detective Glasure received a phone call from Beretta Adams, Ellis' then husband, after which Detective Glasure filed a warrant for Ellis' arrest. SWAT officers located Ellis and brought her to Columbus police headquarters for an interview.

{¶ 9} The state played a recording of Ellis' police interview at trial. At the beginning of the interview, Ellis denied any involvement with Luckett's death. After some time, however, Ellis said "I've been sitting here talking to God, and I can't do it. I can't lie anymore." (Tr. at 191.) Ellis then told the detectives "I did it." (Tr. at 191.) The detectives asked Ellis to tell them what happened, and she said she met Luckett on an online chat line and "[h]e picked [her] up the same night." (Tr. at 192.) Ellis said Luckett bought some beer and she went with him to his house, where Luckett was drinking and Ellis was "getting high." (Tr. at 192.) Eventually, Ellis said she "was so high [she] didn't want to do anything," but that Luckett "tried to force himself on" her. (Tr. at 192.) Ellis said she "was able to convince him that he didn't have to * * * rape [her] or anything, so [she] convinced him to let [her] tie him up in the chair." (Tr. at 192.) After calling herself a "horrible person," Ellis told detectives she "tied [Luckett] up to a chair, and [she] beat him with a baseball bat." (Tr. at 193.) She also said she stabbed him in his throat.

{¶ 10} After she killed Luckett, Ellis told detectives she took approximately $300 that she found in Luckett's apartment and then took Luckett's car. She said she drove the car to the motel she had been staying at, washed herself off, washed the weapons off, and then dumped the weapons in different dumpsters. Ellis said she then drove Luckett's car to a carwash, washed it "inside out," and left it at an apartment complex. (Tr. at 195.) She told detectives she "knew it was a matter of time before [she] * * * got caught." (Tr. at 195.)

{¶ 11} Ellis also testified at trial. She stated she met Luckett through a chat line she had been using to prostitute herself and that Luckett agreed to pay her $300 and buy

her drugs in exchange for Ellis "perform[ing] any sex act that he wanted for the entire evening." (Tr. at 242.) Ellis said she had no intention "whatsoever" of robbing or harming Luckett when she agreed to go with him to his home. (Tr. at 244.) Once she was in Luckett's apartment, Ellis said she was drinking alcohol and was high on Ecstasy and that she "changed [her] mind" and "didn't want to have sex" but that Luckett "tried to force himself on [her]." (Tr. at 245.) Ellis testified that Luckett told her "that if [she] didn't do * * * what he paid [her] to do that [she] was going to pay for it regardless one way or another." (Tr. at 245.) Ellis said she thought Luckett was going to rape her.

{¶ 12} In an effort to "calm him down," Ellis said she told Luckett she would do what Luckett hired her to do and Luckett told her that "he wanted [Ellis] to perform oral sex on him while he was tied up." (Tr. at 246.) Ellis said Luckett instructed her to retrieve shoestrings from his bedroom in order to tie his ankles and wrists to the chair. Ellis said Luckett also wanted her to place a belt around his neck and choke him during the sex act but that "it never got to that." (Tr. at 246.) Before they engaged in any sexual behavior, Ellis said Luckett started calling her derogatory names. Ellis said she tried to leave once Luckett was tied to the chair but that "he was just going off, trying to get out of the chair, threatening [her], saying he was going to kill [her], he was going to find [her] and kill [her] and kill [her] family." (Tr. at 246.) At that point, Ellis said she took a knife off the kitchen table and stabbed Luckett in the neck. She said she wanted to leave after that but she did not "because [she] had been raped before" and she "didn't want him [to] try to find [her] and hurt [her] or try to hurt anybody else." (Tr. at 247.) Instead of leaving, Ellis testified she saw the baseball bat in the corner of the room by the door and she "started hitting him with it." (Tr. at 247.) Ellis testified she had no intention of killing Luckett, but that she only wanted to hurt him.

{¶ 13} After Luckett fell to the floor, Ellis said she grabbed her belongings, the bat, and the knife, and she "wiped [her] prints off everything [she] touched." (Tr. at 247.) She said she took Luckett's car keys and car because she had no other way to leave. Ellis said she "took [her] drugs with [her]," but that she was "discombobulated" during the police interview and that she meant to tell detectives that she only "found the money and the dope" that Luckett had already given to her. (Tr. at 248.) She said she only took what she believed to be hers. Ellis testified she killed Luckett "[b]ecause he tried to hurt [her]" and

"[h]e tried to rape [her]," and that she "didn't want that to happen to [her] or to anyone else." (Tr. at 256.) Ellis said she would not be in this position today were it not for her history of drug addiction and the sexual abuse she suffered as a child.

{¶ 14} On cross-examination, Ellis admitted she had no intention of performing a sex act on Luckett once she bound him to the chair. Ellis further admitted she struck Luckett in the head after he had fallen onto the ground, still bound to the chair. She agreed she never performed the services Luckett had hired her to perform but that she still considered the drugs and money hers because "[o]nce [she] say[s] no it means no." (Tr. at 259.) Additionally, Ellis admitted she could have left the apartment once she had tied Luckett in the chair.

{¶ 15} At the conclusion of the bench trial, the trial court found Ellis guilty of one count of aggravated murder, two counts of murder, one count of aggravated robbery, and one count of tampering with evidence. The trial court found Ellis not guilty on all the remaining counts. Following a sentencing hearing, the trial court merged the aggravated murder and murder convictions, directed the remaining convictions to run concurrent with the merged aggravated murder and murder convictions, and imposed an aggregate sentence of 20 years to life imprisonment. The trial court journalized Ellis' convictions and sentence in a March 14, 2016 judgment entry. Subsequently, the trial court filed a corrected amended judgment entry on April 5, 2016. Ellis timely appeals.

## II. Assignment of Error

{¶ 16} Ellis assigns the following error for our review:

> The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding her guilty of aggravated murder; murder; aggravated robbery and tampering with evidence as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

## III. Discussion

{¶ 17} In her sole assignment of error, Ellis argues sufficient evidence did not support her convictions of aggravated robbery, aggravated murder, murder, and

tampering with evidence and that her convictions are against the manifest weight of the evidence.  We disagree.

### A.  Sufficiency of the Evidence

{¶ 18} Whether there is legally sufficient evidence to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  Sufficiency is a test of adequacy.  *Id.*  The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt.  *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

### 1.  Aggravated Murder, Aggravated Robbery, Murder, and Felony Murder

{¶ 19} Ellis was convicted of aggravated murder in violation of R.C. 2911.01, which provides that "[n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, or attempt to inflict, serious physical harm on another."  R.C. 2911.01(A)(3).  A "theft offense," pursuant to R.C. 2913.01(K), includes violations of R.C. 2911.02, robbery, and R.C. 2913.02, theft.  Theft requires the state to prove beyond a reasonable doubt that Ellis, with the purpose to deprive the owner of property, knowingly obtained control over the property without the consent of the owner or through deception, threat, or intimidation.  R.C. 2913.02.  A person acts with a particular purpose when "it is [her] specific intention to cause a certain result."  R.C. 2901.22(A).

{¶ 20} Ellis was also convicted of aggravated robbery.  Pursuant to R.C. 2903.01(B), "[n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery."

{¶ 21} In order to convict a defendant of murder in violation of R.C. 2903.02(A), the state must prove the defendant purposely caused the victim's death.

{¶ 22} In order to convict a defendant of felony murder in violation of R.C. 2903.02(B), the state must prove the defendant caused the death of another "as a proximate result of the offender's committing or attempting to commit an offense of

violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code." R.C. 2903.02(B). Aggravated robbery is an offense of violence. R.C. 2901.01(A)(9)(a).

{¶ 23} There is no dispute that Ellis inflicted the blows to the head that killed Luckett. The remaining issue is whether the state submitted sufficient evidence that Ellis acted "purposely."

{¶ 24} "[T]he law has long recognized that intent, lying as it does within the privacy of a person's own thoughts, is not susceptible of objective proof." *State v. Garner*, 74 Ohio St.3d 49, 60 (1995), citing *State v. Carter*, 72 Ohio St.3d 545, 554 (1995). Intent to kill "may be deduced from all the surrounding circumstances, including the instrument used to produce death, its tendency to destroy life if designed for that purpose, and the manner of inflicting a fatal wound." *State v. Robinson*, 161 Ohio St. 213 (1954), paragraph five of the syllabus; *see also State v. Eley*, 77 Ohio St.3d 174, 180 (1996).

{¶ 25} Here, Ellis admitted she tied Luckett to the chair and that she had no intention of performing a sex act on him once she bound his arms and legs. Ellis even admitted she could have simply left the apartment once Luckett was tied to the chair. The evidence from the coroner indicated Ellis beat Luckett so severely that he suffered skull and facial fractures. The blood spatter in the apartment indicated Ellis continued to hit Luckett with the baseball bat after he had fallen to the ground, still tied to the chair. The extent and severity of Luckett's injuries and the manner in which they were inflicted was sufficient evidence for the trial court to conclude Ellis acted purposely to kill Luckett. *State v. Lindsey*, 10th Dist. No. 14AP-751, 2015-Ohio-2169, ¶ 36, citing *State v. Scudder*, 71 Ohio St.3d 263, 274 (1994) (stating "the number and nature of [the victim's] stab wounds clearly established [the defendant's] purpose to kill").

{¶ 26} There was also sufficient evidence that Luckett's death occurred during the commission of an aggravated robbery. Though admitting she could have left the apartment after tying Luckett to the chair, Ellis stabbed and beat Luckett, then looked through his apartment for money. She told detectives she took $300 and some drugs, and she also admitted to taking Luckett's car. Thus, there was sufficient evidence for the trial court to find Ellis guilty of aggravated murder, murder, felony murder, and aggravated robbery.

### 2. Tampering with Evidence

{¶ 27} R.C. 2921.12(A)(1) defines tampering with evidence and provides: "[n]o person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any * * * thing, with purpose to impair its value or availability as evidence in such proceeding or investigation." To convict Ellis of tampering with evidence, the state needed to submit sufficient evidence for the trier of fact to conclude Ellis knew or should have known an investigation was forthcoming but nevertheless purposely took steps to conceal the murder weapons, the victim's car, and/or her fingerprints in the apartment.

{¶ 28} Ellis admitted she cleaned anything she touched in Luckett's apartment to remove her fingerprints, cleaned off and disposed of the baseball bat and the knife used to kill Luckett, and cleaned off and dumped Luckett's car. Additionally, she testified on cross-examination that she told police she had been running and "figured eventually" police would figure out she was responsible for Luckett's death. (Tr. at 266.) Thus, the state presented sufficient evidence to allow the trial court to find, beyond a reasonable doubt, that Ellis purposely concealed evidence pivotal to the investigation into Luckett's death. *State v. Miller*, 10th Dist. No. 14AP-851, 2015-Ohio-4678, ¶ 32.

{¶ 29} Having concluded the state presented sufficient evidence to allow a rational trier of fact to find, beyond a reasonable doubt, that Ellis committed the offenses of aggravated murder, aggravated robbery, murder, felony murder, and tampering with evidence, we must next consider whether the manifest weight of the evidence supports those convictions.

### B. Manifest Weight of the Evidence

{¶ 30} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the

trier of fact.  *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony."  *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 31} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.  Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 32} Ellis asserts the trial court clearly lost its way in determining she acted purposely because she testified that Luckett was verbally abusive, threatened her and her family, she was a past victim of rape and domestic violence, and that she only intended to injure Luckett and get away from him.  Essentially, Ellis asks this court to believe only the portions of her testimony that are favorable to her while ignoring the overwhelming evidence supporting her convictions.

{¶ 33} Initially, we note the presence of conflicting testimony does not render a verdict against the manifest weight of the evidence.  *Raver* at ¶ 21.  Additionally, Ellis' argument presupposes the trial court found her to be a credible witness and believed her testimony while disbelieving the statements she made to police and the other evidence presented at trial.  However, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.  *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19.  As we noted above, the trier of fact remains free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21.

{¶ 34} Given that the coroner's description of the nature of Luckett's wounds suggested some of the blows to Luckett's head occurred after Luckett had already fallen to

the floor, and given that Ellis admitted she could have simply left the apartment once Luckett was tied to the chair, the trial court did not clearly lose its way in discounting Ellis' testimony that she did not intend to kill Luckett.  In light of the evidence discussed above, as well as the record in its entirety, we do not find the trial court clearly lost its way in concluding Ellis acted purposely to cause Luckett's death when she beat him in the head with a baseball bat while he was bound to a chair.  The only evidence to the contrary was Ellis' own self-serving testimony that she only wanted to hurt Luckett in order to get away from him. We agree with the trial court's decision to discount the self-serving portions of that testimony in favor of ample other evidence at trial.  Accordingly, Ellis' convictions are not against the manifest weight of the evidence.  Having already determined sufficient evidence supports Ellis' convictions, we overrule Ellis' sole assignment of error.

## IV.  Disposition

{¶ 35} Based on the foregoing reasons, the sufficiency of the evidence and the manifest weight of the evidence support Ellis' convictions.  Having overruled Ellis' sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

TYACK, P.J., and BROWN, J., concur.