[Cite as *State v. Scott*, 2019-Ohio-4175.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

            Plaintiff-Appellee,                   :                    No. 18AP-964
                                                                    (C.P.C. No. 17CR-6371)
v.                                                         :
                                                                    (REGULAR CALENDAR)
Timothy C. Scott,                                 :

            Defendant-Appellant.              :

D E C I S I O N

Rendered on October 10, 2019

**On brief:** *Ron O'Brien,* Prosecuting Attorney, and *Kimberly M. Bond*, for appellee. **Argued:** *Kimberly M. Bond.*

**On brief:** *Todd W. Barstow*, for appellant. **Argued:** *Todd W. Barstow.*

APPEAL from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Timothy C. Scott, appeals from a judgment entry of the Franklin County Court of Common Pleas finding him guilty, pursuant to jury verdict, of one count of rape and one count of gross sexual imposition. For the following reasons, we affirm.

I. Facts and Procedural History

{¶ 2} By indictment filed November 27, 2017, plaintiff-appellee, State of Ohio, charged Scott with five counts of rape in violation of R.C. 2907.02, all first-degree felonies; and one count of gross sexual imposition in violation of R.C. 2907.05, a third-degree felony. All the charges related to Scott's conduct with L.B., the minor victim who was eight years old at the time of the offenses. Scott entered a plea of not guilty.

{¶ 3} At a jury trial in November 2018, L.B.'s father testified that he met Scott at work, befriending him and ultimately allowing Scott to stay at his home during the week so that the two men could ride together for work. L.B.'s father testified he also provided Scott with his garage door passcode so that Scott could access the house on his own. Scott spent so much time at the house that L.B.'s father began to refer to him as "Uncle Tim." (Tr. Vol. 3 at 338.) L.B.'s father testified that Scott would allow L.B. to play with his phone, so L.B. would frequently follow him around the house. After finding L.B. alone with Scott in the basement, L.B.'s father testified he warned L.B. not to be alone with Scott.

{¶ 4} After L.B.'s father started noticing behavioral changes in L.B., he learned that L.B. had confided in a friend that Scott was engaging in sexual conduct with her. L.B. then informed the school guidance counselor and her teacher, resulting in L.B. going to Nationwide Children's Hospital for an evaluation and forensic interview.

{¶ 5} The state played clips of the video recording of the forensic interview during the trial during which L.B. disclosed that Scott had made contact with her breasts, butt, and genitals, including vaginal penetration. She also described having performed fellatio on Scott. The medical professionals conducting the examination did not gather any DNA evidence due to L.B.'s delay in disclosing the abuse. L.B.'s physical examination was normal and did not reveal any physical trauma, as is common in cases with delayed disclosure.

{¶ 6} L.B., who was ten years old by the time of trial, testified that Scott would take her clothes off and touch her chest and genitals, using both his hands and his mouth. She also testified that Scott made her perform fellatio on him. L.B. described the conduct as occurring frequently, and she identified Scott in court as her abuser. Additionally, L.B. testified the sexual conduct occurred when her family was upstairs or in another room of the house.

{¶ 7} Scott testified in his own defense. Though he agreed he stayed in the home with L.B. and agreed he was sometimes alone with her, he denied the allegations of sexual abuse.

{¶ 8} At the conclusion of the trial, the jury returned a guilty verdict on one count of rape and one count of gross sexual imposition. The jury found Scott not guilty on the remaining four counts of rape. Following a November 15, 2018 sentencing hearing, the trial

court sentenced Scott to 15 years to life in prison. The trial court journalized Scott's convictions and sentence in a November 19, 2018 judgment entry. Scott timely appeals.

## II. Assignment of Error

{¶ 9} Scott assigns the following error for our review:

> The trial court erred and deprived appellant of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and Article One Section Ten of the Ohio Constitution by finding him guilty of rape and gross sexual imposition as those verdicts were not supported by sufficient evidence and were also against the manifest weight of the evidence.

## III. Analysis

{¶ 10} In his sole assignment of error, Scott argues his convictions for rape and gross sexual imposition were not supported by sufficient evidence and were against the manifest weight of the evidence.

### A. Sufficiency of the Evidence

{¶ 11} Whether there is legally sufficient evidence to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Sufficiency is a test of adequacy. *Id.* The relevant inquiry for an appellate court is whether the evidence presented, when viewed in a light most favorable to the prosecution, would allow any rational trier of fact to find the essential elements of the crime proven beyond a reasonable doubt. *State v. Mahone*, 10th Dist. No. 12AP-545, 2014-Ohio-1251, ¶ 38, citing *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, ¶ 37.

{¶ 12} The jury convicted Scott of one count of rape in violation of R.C. 2907.02 and one count of gross sexual imposition in violation of R.C. 2907.05. Though Scott captions his argument as a challenge to both the sufficiency and manifest weight of the evidence, his entire argument under this assignment of error relates to L.B.'s credibility as a witness. However, "in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime." *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4. Scott does not raise any arguments related to the state's failure to prove any specific element of any of the crimes

charged but instead argues the evidence the state relied upon lacked credibility. Thus, we address Scott's argument regarding L.B.'s credibility as a witness in our analysis of the manifest weight of the evidence.

### B. Manifest Weight of the Evidence

{¶ 13} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 14} An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 15} Scott argues his convictions are against the manifest weight of the evidence because L.B.'s testimony was not credible. Scott points to several inconsistencies in L.B.'s testimony. However, it was within the province of the jury to believe L.B.'s testimony that Scott engaged in sexual conduct with her. *State v. Berry*, 10th Dist. No. 10AP-1187, 2011-Ohio-6452, ¶ 18 (noting the jury is in the best position to assess the credibility of a witness).

We also note that L.B.'s trial testimony was consistent with the account of the events she provided during her physical examination and forensic interview.

{¶ 16} Moreover, to the extent Scott argues the jury lost its way in believing L.B.'s testimony and disbelieving his own testimony contradicting her, we are mindful that the presence of conflicting testimony does not render a verdict against the manifest weight of the evidence. *Raver* at ¶ 21. Additionally, Scott's argument presupposes the jury found him to be a credible witness and believed his testimony while disbelieving L.B.'s version of events. However, as this court has stated, "a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *State v. Lipkins*, 10th Dist. No. 16AP-616, 2017-Ohio-4085, ¶ 39, citing *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. As we noted above, the trier of fact remains free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21.

{¶ 17} Having reviewed the record in its entirety, we do not find that the jury clearly lost its way when it discounted Scott's testimony in favor of the other evidence at trial, including L.B.'s testimony and her statements during her sexual assault examination and interview. Accordingly, we find sufficient evidence to support Scott's convictions, and Scott's convictions are not against the manifest weight of the evidence. We overrule Scott's sole assignment of error.

## IV. Disposition

{¶ 18} Based on the foregoing reasons, the sufficiency and manifest weight of the evidence support Scott's convictions for rape and gross sexual imposition. Having overruled Scott's sole assignment of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

KLATT, P.J., and BEATTY BLUNT, J., concur.

_____