[Cite as *State v. Black*, 2021-Ohio-676.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-637 |
| v. | : | (C.P.C. No. 19CR-611) |
| Stevie L. Black, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on March 9, 2021

**On brief:** [*G. Gary Tyack*], Prosecuting Attorney, and *Barbara A. Farnbacher*, for appellee.

**On brief:** *Phil Templeton*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Stevie L. Black, appeals a judgment of the Franklin County Court of Common Pleas convicting him, pursuant to jury verdict, of kidnapping and rape. Finding no merit to the appeal, we affirm.

{¶ 2} By indictment filed February 6, 2019, plaintiff-appellee, State of Ohio, charged appellant with one count of kidnapping in violation of R.C. 2905.01, a first-degree felony; one count of rape in violation of R.C. 2907.02, a first-degree felony; one count of robbery in violation of R.C. 2911.02, a second-degree felony; and one count of robbery in violation of R.C. 2911.02, a third-degree felony.

{¶ 3} Appellant pleaded not guilty and requested a jury trial, at which the following evidence was presented.

{¶ 4}   A.S. lived with her boyfriend, A.R., and their children in a trailer park on the south side of Columbus.  Because A.S. did not have WiFi in the trailer, she frequently utilized the open WiFi connection at the nearby Sandpebble Lounge ("Sandpebble").  To reach Sandpebble from her trailer, she had to walk through an open field.  The open field led to a path that provided access to the back of Sandpebble.  The path was bordered by thick, tall brush.

{¶ 5}   Mid-morning on September 25, 2018, A.S. walked alone through the open field to use the WiFi at Sandpebble.  As she stood near the path leading to Sandpebble, an older African American man with a gray beard and mustache approached her; she had never seen the man before.  The man, later identified as appellant, was taller than A.S. and weighed "almost 100 pounds" more than her.  (July 30, 2019 Tr. at 173.)  Appellant told A.S. to "come here." *Id.* at 174.  Although she was frightened, A.S. complied with appellant's directive.  As she neared appellant, she smelled alcohol on him.  Appellant pushed A.S. down and she struck the back of her head on the ground.  As she lay on her back, appellant pulled down her leggings (she was not wearing underwear), pulled down his pants, climbed on top of her, and inserted his penis into her vagina.  Appellant told A.S. that it had been "a long time since he had a woman." *Id.* at 182.  A.S. was crying and praying during the entire ordeal.  Because appellant was so much larger than A.S., she could not physically fight him off.  She did not cry out for help because she was terrified.  After the rape, A.S. pulled up her leggings; they were wet with appellant's semen.  She ran back to her trailer and put the leggings in a plastic bag.

{¶ 6}   Approximately one hour later, A.S. returned to Sandpebble.  She again encountered appellant; this time, he stole her purse, which contained a cell phone, a necklace, and some cash.  She could not report the rape or the robbery to the police because appellant had stolen her cell phone.

{¶ 7}   A.S. did not tell A.R. about the rape when he returned home from work that evening because she was scared to death and did not know whether he would believe her.  A.S. engaged in consensual sex with A.R. that evening.

{¶ 8}   The next day, A.S. and A.R. went to a nearby grocery store.  As they were leaving, appellant stopped them.  A.S. was scared when she saw appellant.  Appellant spoke to A.R., and then offered A.S. his jacket.  A.S. assumed appellant did so because it

was raining and cold.  A.S. took the jacket and then walked home with A.R.   She put the jacket in a plastic bag separate  from the one containing her leggings.  Later that evening, A.S. told A.R. that appellant had raped her the previous day.  At A.R.'s urging, A.S. called the police using a borrowed cellphone.

{¶ 9}    Columbus Police Officer William Wilson interviewed A.S. at approximately midnight on September 26, 2018.  According to Wilson, A.S. was "clearly upset" as she recounted what had happened to her.  *Id.* at 223.  A.S. also reported that her assailant had taken what Wilson described as a "backpack-like item" from her.  *Id.* at 228.  A.S. gave Wilson her leggings, which had semen in the crotch area; she also gave Wilson the jacket appellant had given her. Wilson secured the items in his police cruiser and contacted the sexual assault bureau.

{¶ 10} Columbus Police Sexual Assault Detective Joel Vogel interviewed A.S. at approximately 1:00 a.m. on September 27, 2018.  According to Vogel, A.S. was "very scared [and] timid" and looked down at the floor as she spoke.  It was "[v]ery obvious" to Vogel that "something was upsetting her."  *Id.* at 242.  A.S. reported that she had been sexually assaulted around noon on September 25, 2018 in a grassy field between the trailer park and Sandpebble and that her assailant had stolen her purse at the time of the assault.  She provided a description of her assailant but could not identify him by name.

{¶ 11} Vogel encouraged A.S. to go to the hospital for a sexual assault examination and offered to call an ambulance or have a police officer transport her.  She declined the offer, telling Vogel that she was "too scared" and would have A.R. take her later that day. *Id.* at 254.  Vogel collected oral DNA standards from A.S. and A.R. and submitted them, along with the leggings and jacket, to the crime lab for testing.  Vogel later learned that A.S. did not go to the hospital for a sexual assault examination.

{¶ 12} Vogel again interviewed A.S. in November 2018.  During that interview, A.S. reported that she had learned her assailant went by the street name "C Black."  *Id.* at 258. She told Vogel she recently had seen appellant in the area but did not call the police because he was always with a group of people and she was too scared to do so.  Two days later, based upon an investigatory lead from the crime lab, Vogel identified appellant as a suspect.  Vogel created a photo array which included appellant's photograph.  On November 21, 2018, A.S.

was shown the photo array in accordance with established police procedures. She unequivocally identified appellant as her assailant.

{¶ 13} Appellant was arrested a few weeks later. Vogel obtained an oral DNA standard from appellant and submitted it to the crime lab for comparison to DNA recovered from the crotch area inside A.S.'s leggings. A crime lab forensic scientist confirmed that appellant's DNA was found in the crotch area inside A.S.'s leggings.

{¶ 14} Appellant did not call any witnesses, and the trial court denied his motion for judgment of acquittal pursuant to Crim.R. 29(A). The case was submitted to the jury and, following deliberations, the jury returned verdicts finding appellant guilty of rape and kidnapping, but not guilty of robbery. The trial court ordered a presentence investigation and subsequently sentenced appellant to eleven years of incarceration[1] and notified him that he was being classified a Tier III sexual offender with a lifetime reporting and registration requirement, and a violent offender with a ten-year reporting and registration requirement. The trial court memorialized the conviction and sentence in a judgment entry filed August 29, 2019.

{¶ 15} In a timely appeal, appellant sets forth three assignments of error for our review:

> [I]. The trial court erred when it denied defendant-appellant's R. 29 motion for acquittal.
>
> [II]. The verdicts were against the manifest weight of the evidence.
>
> [III]. The trial court erred when it sentenced the defendant on a count of rape under R.C. §2907.02 without adequately explaining the duties of a sex offender.

{¶ 16} In his first assignment of error, appellant contends that the trial court erred by denying his Crim.R. 29(A) motion for acquittal. A Crim.R. 29(A) motion for judgment of acquittal tests the sufficiency of the evidence. *State v. Reddy*, 10th Dist. No. 09AP-868, 2010-Ohio-3892, ¶ 12, citing *State v. Knipp*, 4th Dist. No. 06CA641, 2006-Ohio-4704, ¶ 11. Accordingly, an appellate court reviews a trial court's denial of a Crim.R. 29(A) motion

---

[1] The trial court merged the kidnapping and rape offenses and the state elected sentence on the rape count.

using the same standard applicable to a sufficiency of the evidence review.  *Id.*, citing *State v. Darrington*, 10th Dist. No. 06AP-160, 2006-Ohio-5042, ¶ 15.

{¶ 17} Sufficiency of the evidence is the legal standard that tests whether the evidence introduced at trial is legally adequate to support a verdict.  *State v. Kurtz,* 10th Dist. No. 17AP-382, 2018-Ohio-3942, ¶ 15, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).  "Whether the evidence is legally sufficient to support a verdict is a question of law, not fact."  *State v. Cervantes*, 10th Dist. No. 18AP-505, 2019-Ohio-1373, ¶ 24, citing *Kurtz* at ¶ 15, citing *Thompkins* at 386.  In determining whether the evidence is legally sufficient to support a verdict, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 18} "In a sufficiency of the evidence inquiry, appellate courts do not assess whether the prosecution's evidence is to be believed but whether, if believed, the evidence supports the conviction."  *Kurtz* at ¶ 16, citing *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, ¶ 79-80.  "The court essentially assumes the state's witnesses testified truthfully and determines whether that testimony satisfies each element of the crime."  *State v. Davis*, 10th Dist. No. 18AP-921, 2019-Ohio-4692, ¶ 38, citing *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.  Further, "[t]he testimony of even 'one witness, if believed by the jury, is enough to support a conviction.' "  *State v. Loomis*, 10th Dist. No. 17AP-843, 2019-Ohio-2576, ¶ 54, quoting *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 19} The jury found appellant guilty of rape in violation of R.C. 2907.02 and kidnapping in violation of R.C. 2905.01.  R.C. 2907.02 provides that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force. * * * Whoever violates this section is guilty of rape, a felony of the first degree."  R.C. 2907.02(A)(2) and (B).  Pursuant to R.C. 2907.01(A), "[s]exual conduct" is defined in relevant part as "vaginal intercourse between a male and female. * * * Penetration, however slight, is sufficient to complete vaginal * * * intercourse."  "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature,

regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature."  R.C. 2901.22(A).

{¶ 20}  Kidnapping is proscribed by R.C. 2905.01, which provides in relevant part that "[n]o person, by force * * * shall * * * restrain the liberty of the [victim] * * * [t]o engage in sexual activity, as defined in [R.C. 2907.01], with the victim against the victim's will." R.C. 2905.01(A)(4).  " 'Sexual activity' means sexual conduct or sexual contact, or both." R.C. 2907.01(C). "Whoever violates [R.C. 2905.01] is guilty of kidnapping." R.C. 2905.01(C)(1).

{¶ 21}  Though appellant argues that the trial court erred in denying his Crim.R. 29 motion because the state failed to present sufficient evidence to prove the elements of rape and kidnapping, his argument, in essence, relates to the credibility of A.S.'s testimony that appellant pinned her to the ground and inserted his penis into her vagina.  Indeed, appellant contends that A.S.'s testimony that she went willingly with appellant, failed to report the incident for several hours, and altered her account of the incident in interviews with police suggests that the sexual encounter with appellant was consensual and that she was lying about being raped.  However, " 'in a sufficiency of the evidence review, an appellate court does not engage in a determination of witness credibility; rather, it essentially assumes the state's witnesses testified truthfully and determines if that testimony satisfies each element of the crime.' "  *State v. Scott*, 10th Dist. No, 18AP-964, 2019-Ohio-4175, ¶ 12, quoting *State v. Bankston*, 10th Dist. No. 08AP-668, 2009-Ohio-754, ¶ 4.  Thus, we will address appellant's credibility arguments in our analysis of his second assignment of error, which argues that his convictions were against the manifest weight of the evidence.

{¶ 22} Appellant's failure to assert a pure sufficiency argument aside, we nonetheless conclude that the testimony of A.S., if believed, provided sufficient evidence to satisfy the elements of a rape offense beyond a reasonable doubt.  A.S. testified that appellant pushed her to the ground, removed her leggings and his pants, climbed on top of her, and inserted his penis into her vagina.  She further testified that because she was so much smaller than appellant, she could not physically defend herself against him.  This testimony, if believed, established that appellant purposely compelled A.S., through the use of force, to submit to sexual conduct, i.e., vaginal intercourse.

{¶ 23} A.S.'s testimony also supports the separate guilty verdict for kidnapping. As noted, A.S. testified that appellant pushed her to the ground, climbed on top of her, and engaged in vaginal intercourse with her. She estimated that appellant outweighed her by more than 100 pounds; as such, she could not physically defend herself against him. This testimony, if believed, was sufficient to establish beyond a reasonable doubt that appellant forcefully restrained A.S.'s liberty to engage in sexual activity, i.e., vaginal intercourse, with her against her will.

{¶ 24} Based on the foregoing, we conclude that the record contains sufficient evidence to support the guilty verdicts for rape and kidnapping beyond a reasonable doubt. The jury apparently believed A.S.'s account of the events occurring on September 25, 2018. We emphasize that the testimony of one witness, if believed by the jury, is sufficient to sustain a conviction. *Loomis*, 10th Dist. No. 17AP-843, 2019-Ohio-2576, ¶ 54. Appellant's first assignment of error is overruled.

{¶ 25} In his second assignment of error, appellant contends his convictions were against the manifest weight of the evidence. We disagree.

{¶ 26} In contrast to the sufficiency of the evidence, the weight of the evidence concerns the inclination of the greater amount of credible evidence offered to support one side of the issue rather than the other. *Thompkins*, 78 Ohio St.3d at 387. Although there may be sufficient evidence to support a judgment, an appellate court may nevertheless conclude that a judgment is against the manifest weight of the evidence. *Id.*

{¶ 27} When presented with a manifest weight challenge, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *Thompkins* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, citing *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). However, "in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, 'is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-

Ohio-4953, ¶ 6, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, this court affords great deference to the jury's determination of witness credibility.  *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55.

**{¶ 28}**  An appellate court considering a manifest weight challenge "may not merely substitute its view for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."  *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387.  An appellate court should reserve reversal of a conviction as being against the manifest weight of the evidence for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' "  *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

**{¶ 29}**  As earlier stated, the testimony of A.S., if believed, was sufficient to satisfy the elements of both rape and kidnapping beyond a reasonable doubt.  Appellant argues, however, that his convictions were against the manifest weight of the evidence because A.S. willingly walked with appellant to the crime scene, failed to call 911 for several hours after the incident, and changed her story several times.

**{¶ 30}**  Initially, we note that appellant's arguments, taken together, suggest that A.S.'s testimony demonstrates that the sexual encounter with appellant was consensual and that she was lying about having been raped.  Defense counsel thoroughly explored this theory through cross-examination and alluded to it during closing argument to the jury. Moreover, A.S. testified that she was telling the truth about what happened to her on September 25, 2018, that she had never seen appellant prior to the day he raped her, and that she had no reason to be angry with him or to "make something up about him."  (Tr. at 195.)

**{¶ 31}**  We turn now to the particulars of appellant's manifest weight arguments.  As to A.S.'s admission that she willingly followed the directive of appellant, a person she did not know, to walk with him into the brush, we note that A.S. testified that she "felt scared" and "was just doing what he said."  *Id.* at 175.  In closing argument, the prosecutor urged

the jury to evaluate this testimony in light of A.S.'s "literal" sensibility. *Id.* at 319. Indeed, the prosecutor stated, "And he told her to come with him. She went. Which, you guys all saw [A.S.]. That's the kind of person she is. Oh, okay. You told me to come with you. I'll come with you." *Id.* at 319. The jury, as trier of fact, was in the best position to view A.S. as she testified and observe her demeanor, gestures, and voice inflections, and use those observations in assessing her credibility on this issue.

{¶ 32} As to A.S.'s failure to call 911 for several hours after the incident, we first note A.S.'s initial testimony that she could not call the police because she did not have any minutes on her cell phone. Although A.S. subsequently testified that she did not call the police because appellant had stolen the purse that contained her cell phone, the jury was in the best position to assess A.S.'s credibility as to her reasons for not calling the police until she reported the incident to A.R. and he urged her to do so.

{¶ 33} In addition, we note the testimony of the two law enforcement officers who interviewed A.S. The first, Wilson, a 38-year veteran who has spent his entire career patrolling the south side of Columbus, testified that crime victims in that area often do not call the police right away because they are "scared" to do so. *Id.* at 228. In addition, Vogel, a 19-year veteran who has spent the last 3 years as a detective in the sexual assault unit, testified that in his experience, the fact that A.S. waited one and a half days after the sexual assault to report it to the police was not unusual. Indeed, he testified that it "struck me as actually kind of quick to report." *Id.* at 247. According to Vogel, sexual assault victims sometimes wait days, weeks, months, or years to report an assault. Vogel further averred that "given [A.S.'s] demeanor," he was not surprised that she did not want to go to the hospital and submit to a sexual assault examination. *Id.* at 254. The jury reasonably could have concluded that A.S.'s reluctance to immediately call the police was understandable. Indeed, the jury reasonably could have concluded that A.S. was reluctant to call the police based upon both a general fear of the police and a specific fear of reporting a rape which would require her to submit to a sexual assault examination.

{¶ 34} As to appellant's contention that A.S. changed her story several times, we initially note that appellant does not direct this court's attention to the portions of the record that would substantiate this claim, other than to argue that A.S. "changed her story throughout the several statements she gave detectives." (Appellant's Brief at 6.) Appellant

does not articulate, or even allude to, the alleged inconsistencies in A.S.'s recitation of the events to the police officers with whom she had contact. We decline to create an argument on appellant's behalf in this regard. *State v. Sims*, 10th Dist. No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (stating the general rule that an appellant bears the burden of affirmatively demonstrating error on appeal); *State v. Smith*, 9th Dist. No. 15AP-0001n, 2017-Ohio-359, ¶ 22 (noting that it is not the duty of an appellate court to create an argument on an appellant's behalf). Moreover, Vogel testified that individuals who suffer traumatic events such as sexual assaults do not always remember or relay details of the event during an initial police interview; accordingly, such individuals are often interviewed numerous times in order to ascertain pertinent details regarding the event.

{¶ 35} Finally, even assuming that the narrative A.S. presented to the police during her various interviews was inconsistent, it was within the province of the jury to take note of such inconsistencies and resolve them accordingly. The jury was free to believe all, part, or none of A.S.'s testimony. *State v. Ellis*, 16AP-279, 2017-Ohio-1458, ¶ 33, citing *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21. Mere disagreement over witness credibility is not a sufficient reason to reverse a judgment as against the manifest weight of the evidence. *State v. Johns*, 10th Dist. No. 11AP-203, 2011-Ohio-6823, ¶ 17, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

{¶ 36} After reviewing the entire record, weighing the evidence and all reasonable inferences, and considering the credibility of witnesses, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered. The weight of the evidence supports the verdicts reached by the jury. Accordingly, appellant's second assignment of error is overruled.

{¶ 37} In his third assignment of error, appellant contends the trial court erred in failing to provide the notifications required by R.C. Chapter 2950 regarding his registration duties as a Tier III sex offender. Specifically, appellant contends that the trial court failed to advise him "that he has a duty to register following the immediate release of confinement" and that he "has duties to register if [he] travel[s] out of state." (Appellant's Brief at 9.)

{¶ 38} The judgment entry in his case states that "the Court notified the Defendant that the Defendant will be a sexual offender and classified pursuant to S.B. 10 as a Tier III

with registration duties to last a lifetime; in person verification is required every ninety (90) days and community notification will be sent." (Aug. 29, 2019 Jgmt. Entry at 2.) As a Tier III sex offender, appellant is subject to lifetime registration duties every 90 days following his release from prison. *See* R.C. 2950.07(B)(1) (specifying that the registration requirement for a Tier III sex offender is for life) and R.C. 2950.06(B)(3) (requiring verification every 90 days for a Tier III sex offender).

{¶ 39} Regarding a sex offender's registration duties, a trial court must comply with R.C. 2950.03(A), which provides, in pertinent part:

> Each person who * * * is convicted of * * * a sexually oriented offense * * * and who has the duty to register pursuant to section 2950.04 or 2950.041 of the Revised Code * * * shall be provided notice in accordance with this section of the offender's * * * duties imposed under sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code and of the offender's duties to similarly register, provide notice of a change, and verify addresses in another state if the offender resides, is temporarily domiciled, attends a school or institution of higher education, or is employed in a state other than this state.

{¶ 40} Further, and as relevant here, R.C. 2950.03(A)(2) provides that the trial judge "shall provide the notice to the offender at the time of sentencing."

{¶ 41} The specifics of the sex offender registration notice requirements are set forth in R.C. 2950.03(B)(1), which states:

> The notice provided under division (A) of this section shall inform the offender * * * of the offender's * * * duty to register, to provide notice of a change in the offender's * * * residence address or in the offender's school, institution of higher education, or place of employment address, as applicable, and register the new address, to periodically verify the offender's * * * residence address or the offender's school, institution of higher education, or place of employment address, as applicable, and, if applicable, to provide notice of the offender's * * * intent to reside, pursuant to sections 2950.04, 2950.041, 2950.05, and 2950.06 of the Revised Code. The notice shall specify that, for an offender, it applies regarding residence addresses or school, institution of higher education, and place of employment addresses * * *. Additionally, it shall inform the offender of the offender's duties to similarly register, provide notice of a change in, and verify those

addresses in states other than this state as described in division (A) of this section.

{¶ 42} R.C. 2950.03(B)(1)(a) provides that if the notice is provided under R.C. 2950.03(A)(2), the "judge shall require the offender to read and sign a form stating that the offender's duties to register, to file a notice of intent to reside, if applicable, to register a new residence address or new school, institution of higher education, or place of employment address, and to periodically verify those addresses, and the offender's duties in other states as described in division (A) of this section have been explained to the offender." The statute further provides that "[i]f the offender is unable to read, the * * * judge shall certify on the form that the * * * judge specifically informed the offender of those duties and that the offender indicated an understanding of those duties."

{¶ 43} R.C. 2950.03(B)(2) specifies that the notice "shall be on a form prescribed by the bureau of criminal identification and investigation and shall contain all of the information specified in division (A) of this section and all of the information required by the bureau." R.C. 2950.03(B)(3) requires that after the form is signed or certified in accordance with R.C. 2950.03(B)(3)(a), the judge "shall give one copy of the form to the offender, * * * [and] shall send one copy of the form to the bureau of criminal identification and investigation, * * * the sheriff of the county in which the offender expects to reside, and the sheriff of the county in which the offender was convicted or pleaded guilty if the offender has a duty to register pursuant to division (A)(1) of section 2950.04 or 2950.041 of the Revised Code."

{¶ 44} At the sentencing hearing, the trial court addressed appellant regarding his Tier III sex offender classification:

> THE COURT: So first, Mr. Black, I have this form called Explanation of Duties to Register as a Sex Offender. Down at the bottom * * * above "Offender's Signature" it looks like you signed that form; is that correct?
>
> [DEFENDANT]: Yes, sir.
>
> [THE COURT]: Okay. And you had an opportunity to go through this form with your attorney, I take it?
>
> [DEFENDANT]: Yes, sir.

[THE COURT]: Okay. So again, by signing this form what you're acknowledging, again, is that you've been convicted of a sexually oriented offense. It's a Tier 3 level sex offense, which is going to require you to register in person with the sheriff every 90 days for a period of your lifetime, and there are also residency requirements that you can't live 1,000 feet from schools or daycares or what have you.

It's all listed in this form. You've gone over that form with your lawyer. Do you understand going forward these requirements as of now that are under the law? Do you understand?

[DEFENDANT]: This is what I don't understand. Okay? You said I have to register every year for the rest of my life?

[THE COURT]: It is every 90 days, yes.

[DEFENSE COUNSEL]: Every three months.

[THE COURT]: Every three months.

[DEFENDANT]: For how long?

[DEFENSE COUNSEL]: The rest of your life.

[THE COURT]: That's what the standard is now. I don't remember if under the law there's a way to petition for relief from that, but that's what the standard of the law is right now, is you have to register every 90 days for a period of life. Okay?

(Aug. 29, 2019 Sentencing Hearing Tr. at 3-5.)

{¶ 45} The foregoing colloquy demonstrates that appellant was provided the requisite notice on the prescribed form. Indeed, the trial court referred to the form by its title, "Explanation of Duties to Register as a Sex Offender," and ascertained that appellant had signed the form following consultation with his attorney. The record includes the "Explanation of Duties to Register as a Sex Offender" form, which was signed by appellant and the trial judge on the date of appellant's sentencing. The form indicates that appellant is classified as a Tier III sex offender and sets forth his registration requirements in detail, including that he must register with the sheriff of the county of residence within three days of coming into the county, provide notice of temporary lodging information if absent for seven days or more, and must register with the sheriff in another state when living, working,

or attending school in that other state. The form further indicates that as a Tier III sex offender, appellant must comply with the registration requirements "for your lifetime with in-person verification every 90 days."

{¶ 46} The foregoing demonstrates that the trial court provided appellant the notice required by R.C. Chapter 2950, including the advisements appellant asserts were not provided. Appellant's third assignment of error is overruled

{¶ 47} Having overruled appellant's first, second, and third assignments of error, we hereby affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and BEATTY BLUNT, JJ., concur.

_____